**UNITED STATES of America, Appellee,**

v.

**Christos POTAMITIS, Eddie Argitakos, and Steve Argitakos, Appellants.**

**Nos. 1284–86, Dockets 84–1036–38.**

United States Court of Appeals, Second Circuit.

Argued June 6, 1984.

Decided July 10, 1984.

Certiorari Denied Oct. 15 and Oct. 29, 1984.

See 105 S.Ct. 297, 332.

Dennis B. Schlenker, Albany, N.Y. (Kathleen J. Pehl, John B. Sheehan, Albany, N.Y., of counsel), for appellant Potamitis.

Lawrence A. Dubin, New York City (Goldberger, Feldman & Dubin, New York City, of counsel), for appellant Eddie Argitakos.

Joel A. Brenner, New York City (Goldberger, Feldman & Dubin, New York City, of counsel), for appellant Steve Argitakos.

Ira H. Block, Asst. U.S. Atty., New York City (Rudolph A. Giuliani, U.S. Atty. for the Southern Dist. of N.Y., Celia Goldwag Barenholtz, Benito Romano, Asst. U.S. Attys., New York City, of counsel), for appellee.

Before OAKES and WINTER, Circuit Judges, and MISHLER, District Judge.*

OAKES, Circuit Judge:

Christos Potamitis, Eddie Argitakos, and Steve Argitakos appeal from judgments of conviction entered after a jury trial in the United States District Court, 564 F.Supp. 1484, for the Southern District of New York, Edward Weinfeld, Judge. Potamitis, Eddie Argitakos, and others were convicted of bank larceny, interstate transportation of stolen property, conspiracy, and other offenses. Steve Argitakos was acquitted of conspiracy, but convicted of being an accessory after the fact for transporting and concealing the proceeds of the theft. Potamitis was also convicted of making fraudulent statements to the FBI, perjury before the grand jury, and obstruction of justice. Another defendant, Demetrios Papadakis, was acquitted of all charges. We have considered the appellants' objections and affirm the judgments of the district court.

## FACTS

The Government proved at trial that Christos Potamitis, Eddie Argitakos, and others planned and executed an elaborate robbery of the Sentry Armored Courier Corporation (Sentry) in Bronx, New York, where Potamitis was employed as a guard. More than $11 million in currency and valuables was stolen, only about $1 million of

---

* Of the Eastern District of New York, sitting by designation.

which has been recovered to date. The evidence showed that Potamitis and Eddie Argitakos "staged" a robbery at Sentry on the night of December 12, 1982, when Potamitis was the only guard on duty. The alarm, which Potamitis was responsible for activating, did not sound. On the morning of December 13, Sentry's assistant vice president found Potamitis handcuffed to the railing of a staircase, the apparent victim of the robbery.

Potamitis gave his account of the incident to New York City police officers and FBI agents. He stated that he had been surprised at his desk by two masked gunmen who took his gun, led him out of the office, and handcuffed him to the railing. He also testified before the grand jury on the matter, specifically asserting that he had properly set the alarm at the scheduled time on the evening of December 12, and was unaware that the system was not working properly. He denied any involvement in or prior knowledge of the theft. He stated that he had not let any unauthorized persons onto Sentry's premises, and knew neither the identity of the robbers nor the location of the missing money and valuables.

At trial, the testimony of George Legakis and Lenny Cascio related a series of conversations and meetings among Potamitis, Eddie Argitakos, Nicholas Gregory, and themselves, during which the robbery and concealment of its proceeds were planned. Two other key witnesses who had testified before the grand jury, Steve Panagopoulos and Gerrasimos Pavlatos, failed to appear at the trial to testify. After evidentiary hearings, the district court determined that Steve Argitakos, Eddie Argitakos's father, was responsible for their unavailability and admitted their grand jury testimony as evidence against him. Panagopoulos had testified before the grand jury that Steve Argitakos shortly after the robbery had asked him to store a locked footlocker in his garage in East Greenbush, New York. After Eddie Argitakos was arrested, Panagopoulos had the footlocker delivered to federal authorities, who discovered almost $400,000 of money taken during the robbery.

## DISCUSSION

The appellants raise numerous objections to their convictions. Most importantly, they contend that (1) the Government's proof was insufficient to establish the conspiracy charged in the indictment; (2) the district court erred in admitting into evidence certain grand jury testimony; (3) the court erred in denying various motions for severance; (4) venue was improper with respect to Eddie Argitakos on the charge of being an accessory after the fact.

1. *Scope of the conspiracy charged and proved.* Eddie Argitakos and Potamitis argue that their convictions for conspiracy must be reversed because of an alleged variance between the indictment and the evidence adduced at trial. According to the appellants, the indictment charged a single conspiracy, while the evidence purportedly established separate conspiracies: one to commit the robbery which supposedly ended when the robbers left Sentry's premises with the money, a second to deal with the proceeds which presumably began sometime after the robbery was accomplished. Because of the alleged variance between the indictment and proof, appellants argue that their convictions must be reversed, relying on *Grunewald v. United States*, 353 U.S. 391, 405, 77 S.Ct. 963, 974, 1 L.Ed.2d 931 (1957), *Lutwak v. United States*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953), and *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949).

The question whether the proof establishes a single or multiple conspiracies is an issue of fact "singularly well-suited to resolution by the jury." *United States v. McGrath*, 613 F.2d 361, 367 (2d Cir.1979), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed.2d 827 (1980). Implicit in the jury's verdict here is the finding that the Government proved a single conspiracy. Construing the evidence in the light most favorable to the Government, *United States v. Murray*, 618 F.2d 892, 902 (2d Cir.1980), the evidence was clearly suffi-

cient as a matter of law to support the finding of a single conspiracy.

The cases on which the appellants rely involve far different circumstances from those involved here. In *Grunewald*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931, for example, the court determined that the main objective of the conspiracy was to obtain "no prosecution" rulings from the IRS as part of a tax fraud scheme. Since no agreement to conceal the conspiracy after its accomplishment was shown or could be inferred from the record, the court held that the duration of the conspiracy could not be lengthened indefinitely to keep the statute of limitations from expiring. The court went on to make a "vital" distinction between "acts of concealment done in furtherance of the *main* criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *Id.* at 405, 77 S.Ct. at 974 (emphasis in original). We believe that this case is a clear example of the former.

The evidence established a single conspiracy involving the robbery itself, obstruction of the investigation, and various acts of concealment. For example, it was essential to the plan that Potamitis remain behind to play the "victim," to conceal his involvement in the crime and the identity of his co-conspirators. Potamitis's ruse enabled the others to flee and gave them time to secrete the proceeds. Clearly, the evidence was sufficient to support the jury's finding that Potamitis's actions subsequent to the theft were part of the original conspiracy to rob Sentry. The nature of the crime involved in this case shows that "the successful accomplishment of the crime necessitate[d] concealment." *Grunewald*, 353 U.S. at 405, 77 S.Ct. at 974. *See United States v. Colasurdo*, 453 F.2d 585, 592 (2d Cir.1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972).

Likewise, the jury could fairly have concluded that the division and concealment of the proceeds were parts of the single conspiracy. As this court has said,

"where a general objective of the conspirators is money, the conspiracy does not end, of necessity, before the spoils are divided among the miscreants." *United States v. Knuckles*, 581 F.2d 305, 313 (2d Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978). *Accord, United States v. Mennuti*, 679 F.2d 1032, 1035 (2d Cir. 1982). Thus, consistent with *Grunewald*, the jury could infer from the evidence that acts to conceal and divide the proceeds were part and parcel of a single scheme to rob Sentry.

2. *Admission of grand jury testimony.* After conducting evidentiary hearings pursuant to *United States v. Mastrangelo*, 693 F.2d 269, 273 (2d Cir.1982), *cert. denied*, — U.S. ——, 104 S.Ct. 2385, 81 L.Ed.2d 343 (1984), Judge Weinfeld declared Steve Panagopoulos and Gerrasimos Pavlatos to be unavailable witnesses. Stating that he had no doubt that Steve Argitakos was responsible for the witnesses' disappearance, Judge Weinfeld ruled that their grand jury testimony was admissible against him. Steve Argitakos argues here that the district court was clearly erroneous in finding that he was responsible for the witnesses' unavailability and that he was denied a fair trial as a result of the admission of the grand jury testimony. Relying primarily on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), Eddie Argitakos and Potamitis claim that despite the trial court's limiting instructions, admission of the testimony resulted in unfair prejudice to them.

A defendant may waive the right to confront witnesses against him when his own misconduct is responsible for a witness's unavailability at trial. *Mastrangelo*, 693 F.2d at 272–73 (citing numerous cases). The testimony at the evidentiary hearings before the district court provided ample support for the conclusion that Steve Argitakos's threats kept Panagopoulos and Pavlatos from appearing at trial. Moreover, Judge Weinfeld's finding was based largely on his evaluation of the credibility of this testimony. Thus, on this record,

there is no basis on which we can hold, as appellants would have us do, that the court's ruling was clearly erroneous. Since the record fully supports the finding that Steve Argitakos was responsible for the witnesses' unavailability, his confrontation clause objections to the admission of the grand jury testimony carry no weight.

■ The claim that the Government is at fault for not securing the presence of the two witnesses is also meritless. To satisfy the "basic litmus of Sixth Amendment unavailability," and thus to fall within the exception to the confrontation clause, the prosecution must make a "good faith effort" to obtain the presence of witnesses at trial. *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980). Judge Weinfeld found that such efforts were made here. In the case of Panagopoulos, who had fled to Greece before a trial date was set, the prosecutors enlisted the aid of the United States embassy to attempt to locate him. Embassy representatives met with Panagopoulos's brothers and left copies of both the grand jury and trial subpoenas with them. They also hired professional process servers licensed in Greece, and the record details their thorough efforts to locate the witness. We are satisfied, then, that the Government fulfilled its obligation to make a good faith effort to secure Panagopoulos's presence at trial.

■ We also believe that the Government's efforts to obtain Pavlatos's appearance were adequate. When Pavlatos first failed to appear, a material witness warrant was secured. FBI Agent Coleman rather quickly located Pavlatos in Montreal, and Pavlatos told Coleman about a number of threats made against him and his family. Because the warrant was not effective in Canada, Coleman could not arrest Pavlatos. Instead, he managed to induce him to return voluntarily to New York, with the promise that he would not be arrested once in the United States. Agents kept in close touch with Pavlatos upon his return. As late as the Saturday evening preceding his scheduled Monday appearance, he told them that he would testify. Later that evening, however, Pavlatos again disappeared. On this record, we agree with Judge Weinfeld that the Government acted reasonably and in good faith in attempting to secure Pavlatos's testimony.

■ Finally, we are unpersuaded by the argument raised by Eddie Argitakos and Potamitis that admission of the grand jury testimony of Panagopoulos and Pavlatos against Steve Argitakos resulted in prejudicial spillover, thereby denying them a fair trial. Appellants' assertions notwithstanding, *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), is simply inapposite to this case. In *Bruton*, the Supreme Court held that the introduction of a statement by a nontestifying defendant which inculpates a co-defendant may violate the co-defendant's Sixth Amendment confrontation rights. Here, the grand jury testimony simply did not inculpate either Eddie Argitakos or Potamitis. Potamitis was not even mentioned in the statements; Eddie Argitakos is mentioned in three brief passages in which Pavlatos acknowledged that he knew Eddie, that Eddie was Steve's son, and that Eddie had gone to Greece on his honeymoon. None of these statements tended to incriminate Eddie in any way. In light of the trial court's limiting instructions, we do not believe that this admission of the testimony against Steve Argitakos prejudiced his co-defendants.

3. *Motions for severance.* Each of the defendants claims that the district court abused its discretion in denying various motions for severance. Eddie and Steve Argitakos argue first that the denial of their motions to sever resulted in prejudicial spillover from evidence admissible only against their co-defendants. They claim further that their defenses at the joint trial were irreconcilably antagonistic and thus that they should not have been tried together. Potamitis contends that he was prejudiced by the district court's refusal to sever the counts charging him with making false statements to FBI agents, committing

perjury before the grand jury, and obstruction of justice.

■ The disposition of a motion for severance falls within the discretion of the trial court. Fed.R.Crim.P. 14. The exercise of that discretion will be reversed only upon an appellant's showing of "substantial prejudice" as a result of the court's denial of a severance motion. *United States v. Cunningham*, 723 F.2d 217, 229–30 (2d Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984); *United States v. Anzalone*, 626 F.2d 239, 247 (2d Cir.1980). Substantial prejudice does not simply mean a better chance of acquittal, *United States v. Weisman*, 624 F.2d 1118, 1129–30 (2d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980); rather, the appellants must show that a "miscarriage of justice [has] occurred" as a result of the court's refusal to sever the trials. *United States v. Herrera*, 584 F.2d 1137, 1143 (2d Cir.1978), quoting *Schaffer v. United States*, 221 F.2d 17 (5th Cir.1955).

■ We are satisfied that Judge Weinfeld's limiting instructions to the jury were adequate to protect Eddie and Steve Argitakos from prejudicial spillover from evidence admissible only against other codefendants. Indeed, the appellants point to no flaws in the instructions themselves, or to instances in which the court failed to give such instructions. As this court has observed, "[i]t is sound doctrine, to be sure, that juries must be supposed usually to be able and determined to follow instructions." *United States v. Kaplan*, 510 F.2d 606, 611 (2d Cir.1974). Given that the case is, as the district court characterized it, "relatively simple and concise," we find that the district court did not abuse its discretion in denying the motions to sever based on prejudicial spillover. *United States v. Potamitis*, 564 F.Supp. 1484, 1487 (S.D.N.Y.1983).

■ Likewise, we are not persuaded by the argument that severance was required because the defenses of Steve and Eddie Argitakos were antagonistic. As we explained in *United States v. Carpentier*, 689 F.2d 21, 27–28 (2d Cir.1982), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983), "[a] simple showing of some antagonism between defendants' theories of defense does not require severance." Separate trials are required only upon a showing that "the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant." 689 F.2d at 28, *quoting United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir.1981).

■ Steve Argitakos argues that the joint trial with his son prevented him from testifying in his defense that he received the trunk from his son, Eddie, and delivered it to Panagopoulos. At no time, however, did counsel for Steve Argitakos offer any particularized showing of what his client's testimony would be or why such testimony could not be presented at a joint trial. The district court specifically pointed to this failure in denying Steve Argitakos's pretrial severance motion. *United States v. Potamitis*, 564 F.Supp. at 1487. With respect to this claim, there is nothing now before us which details any further an antagonism of the nature and degree required to compel severance.

Eddie Argitakos's antagonism claim focuses exclusively on his disagreement with Steve Argitakos concerning who put the locked trunks with proceeds from the Sentry theft in the Panagopoulos garage and in another individual's basement. Even granting that the defendants disagreed completely on this point, it simply does not involve a fundamental antagonism regarding "the core" of one's defense. *Carpentier*, 689 F.2d at 28, quoting *Berkowitz*, 662 F.2d at 1134. Given the overwhelming evidence of Eddie Argitakos's involvement in the theft from the beginning, whatever unfavorable inferences the jury may have drawn from the efforts of counsel for Steve Argitakos to tie Eddie to the trunks, these cannot be said to have resulted in "substantial prejudice."

Finally, Potamitis argues that he suffered substantial prejudice by the district court's refusal to sever the counts charging him with false statements, perjury, and obstruction of justice. The law in this circuit clearly supports the joinder of underlying substantive crimes with perjury counts where, as here, the false declarations concern the substantive offenses. *United States v. Carson,* 464 F.2d 424, 436 (2d Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219 (1972); *United States v. Sweig,* 441 F.2d 114, 118–19 (2d Cir.), *cert. denied,* 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971); *see generally United States v. Werner,* 620 F.2d 922, 928–29 (2d Cir.1980). The contention that there is some inherent prejudice in joining perjury and related counts with substantive offense charges has been widely rejected. *See, e.g., United States v. Kim,* 595 F.2d 755, 770–71 (D.C.Cir.1979); *United States v. Schilleci,* 545 F.2d 519, 522 (5th Cir. 1977). Thus, Judge Weinfeld did not abuse his discretion in denying Potamitis's motion to sever these counts.

4. *Venue.* Steve Argitakos argues that his conviction must be set aside because there was insufficient credible evidence that he committed an act in the Southern District of New York. Argitakos was charged, inter alia, with being an accessory after the fact, 18 U.S.C. § 3 (1982); this was the only crime for which he was convicted. The acts which constituted this offense were moving and concealing more than $1 million of proceeds of the Sentry theft. Thse acts clearly show the offense to be a continuous one for purposes of the relevant venue statute, 18 U.S.C. § 3237(a) (1982), which provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

To prove venue, the prosecution must show by a preponderance of the evidence that "any part of the crime was committed within the district." *United*

*States v. Panebianco,* 543 F.2d 447, 455 (2d Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977). Of course, venue may be proved by circumstantial evidence. *United States v. Gargiso,* 456 F.2d 584, 588 n. 5 (2d Cir.1972). Judge Weinfeld's charge actually put the prosecution to a higher standard of proof, stating that the jury must find beyond a reasonable doubt that Steve Argitakos "did receive, relieve, comfort or assist one or more of the other defendants by means of the acts charged in the indictment, and that at least some of his activities in this regard took place in the Southern District of New York."

Objections to venue are waived unless "specifically articulated" in defense counsel's motion for acquittal. *United States v. Grammatikos,* 633 F.2d 1013, 1022 (2d Cir.1980). A general motion for a judgment of acquittal, or a general motion for a directed verdict of acquittal at the close of the Government's case, is not sufficient to raise and preserve for appeal the question of venue. *United States v. Menendez,* 612 F.2d 51, 54–55 (2d Cir.1979); *United States v. Boney,* 572 F.2d 397, 400–01 (2d Cir.1978). The fact that defense counsel sought on cross-examination to show that one could travel from Queens to East Greenbush without passing through the Southern District, and the fact that counsel requested a venue instruction, is not enough to prevent waiver of the venue objection in this case. Counsel's actions merely show his intention to put the Government to its proof on the issue; they do not satisfy the "specific articulation" requirement of our cases.

Nevertheless, the Government put on sufficient evidence from which the jury could conclude that at least some of Steve Argitakos's activities as an accessory after the fact occurred in the Southern District. Joanna Panagopoulos testified that she spoke with Steve Argitakos the day that he delivered the trunk to her garage in East Greenbush, New York. She stated that Argitakos told her that he had left New York early that morning and planned to

return to New York that night. He also asked her for directions to the New York State Thruway "to get back to New York," the route which, according to other testimony at trial, is the most direct route for automobile travel between East Greenbush and New York City and passes through the Southern District of New York. The jury could infer from this uncontradicted testimony that Argitakos concealed and transported the trunk through the Southern District as part of his activity as an accessory after the fact.

We have considered the appellants' other objections and find them to be without merit. Thus, we affirm the judgments of conviction.

Judgments affirmed.