**UNITED STATES of America,**

v.

**Gerassimos VINIERIS, Defendant.**

**No. SSS 83 Cr. 68 (EW).**

United States District Court,
S.D. New York.

Feb. 28, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for United States; Robert Garcia, Steven A. Standiford, Asst. U.S. Attys., of counsel.

Schulman & Laifer, Brooklyn, N.Y., for defendant; Barry E. Schulman, of counsel.

OPINION

EDWARD WEINFELD, District Judge (Orally);

Counsel for the defendant, Gerassimos Vinieris, notified the prosecution shortly before the commencement of this trial, pursuant to Fed.R.Crim.P. 12.2(b), that he in-

tended to introduce expert testimony on defendant's mental condition. The Government indicated opposition to such testimony. Accordingly, a hearing was conducted at which testimony was given by Jerome E. Driesen, M.D., a psychiatrist who had examined the defendant on two separate occasions, April 30, 1984 and July 16, 1984, and whose expert opinion is relied upon by defendant.

Vinieris's counsel expressly disavowed that the expert's testimony was intended to sustain any defense under 18 U.S.C. § 4241 that defendant was currently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense. As stated by counsel, the proffered evidence was intended to support Vinieris's claim that in general, during the relevant period, he did not have the capacity to receive and comprehend information from those with whom he had contact, including Mike Pavlatos, who allegedly told him to pick up two trunks that contained money stolen from the Sentry Armored Courier Corporation ("Sentry") and were stored at a house in Queens, New York. In particular, counsel asserted the evidence would support Vinieris's claim that when he was questioned by agents of the FBI investigating the Sentry theft and made various statements to them as to the source and reasons for his possession of approximately $169,000 in currency, allegedly part of the proceeds of the Sentry theft, Vinieris did not have the capacity to understand the questions put to him by his interrogators and therefore gave incorrect but unintentional answers. In sum, Vinieris asserts that he lacked and could not formulate a specific criminal intent, an essential element of the crimes charged against him.

This defense is based essentially upon a doctrine formulated by the District of Columbia Court of Appeals in *United States v. Brawner*[1] that "expert testimony as to a defendant's abnormal mental condition may be received and considered, as tending to show, in a responsible way, that defendant did not have the specific mental state required for a particular crime or degree of crime—even though he was aware that his act was wrongful and was able to control it, and hence was not entitled to complete exoneration."[2] Our Court of Appeals recognized that doctrine in *United States. v. Busic*.[3] Thus, the purpose of the proffered expert's opinion is to negate the element of the crime that Vinieris acted voluntarily and intentionally and with the specific intent to do something which the law forbids, that is to say with a bad purpose either to disobey or disregard the law.[4] As stated by our Court of Appeals, the mental element to be negated is that Vinieris not only was conscious and aware of what he was doing and saying but acted "voluntarily and intentionally to violate a known legal duty."[5]

Vinieris also was examined by a Government psychiatrist, Naomi Goldstein, M.D. She, as had Dr. Driesen, interviewed Vinieris on two occasions, prepared a written report, and gave oral testimony before this Court. Not surprisingly, the psychiatrists are in sharp disagreement in their conclusions whether, during the relevant period, the defendant had the capacity to form the specific criminal intent required as an essential element of the crimes charged. Whereas Dr. Driesen concluded, as noted in his report and explicated at the hearing, that Vinieris suffers from both "organic brain dysfunction" and a "schizophrenic disorder of the latent type"—that he suffers from both neurological and psychiatric disorders—Dr. Goldstein was of the opinion

1. 471 F.2d 969 (D.C.Cir.1972) (en banc).

2. *Id.* at 998.

3. 592 F.2d 13, 20–22 (2d Cir.1978).

4. *See United States v. Pomponio*, 429 U.S. 10, 11, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976) (per curiam); *see generally Morissette v. United States*, 342 U.S. 246, 264–65, 72 S.Ct. 240, 250–51, 96 L.Ed. 288 (1952).

5. *United States v. Winston*, 558 F.2d 105, 109 (2d Cir.1977).

that "there is no evidence of schizophrenia or other major mental disorder, or reliable evidence of an organic brain syndrome which would interfere with his capacity to form the requisite intent for the crimes charged."[6]

Dr. Driesen's testimony, to understate it, was equivocal and cloudy and, in some respects, even contradictory. After a series of "yes and no" responses to critical questions touching on defendant's mental capacity to comprehend questions and give responsive answers when testifying before the Grand Jury and before a jury in a civil action in which Vinieris was the plaintiff, Dr. Driesen was asked whether, during the relevant period from December 1982 through August 1983, Vinieris had "the capacity to do something willfully in the sense that it was done voluntarily, intentionally and with a bad purpose ... to do something that the law forbids." He responded, "I would think if he had the ability to concentrate at times he probably could formulate that intent" and that "at times, I think he had the capacity to concentrate."[7] Finally, in response to the question whether Vinieris had the capacity to make a fraudulent statement that was "known to be untrue and made or caused to be made with the intent to deceiv[e] the person to whom it was made," Dr. Driesen gave the unenlightening opinion that "at times yes and at times no, depending on the context of his thinking, ... [on] whether the statement or the environment was such that [it] was able to intrude [upon] his thoughts. It would be yes, otherwise it would be no."[8]

Dr. Goldstein, on the other hand, was of the view that the transcripts of Vinieris's Grand Jury testimony (also reviewed by Dr. Driesen) showed that he "was very alert, attentive to the issues which he grasped well, ... that he was coherent, relevant, goal-directed in his thinking, and extremely protective[,] and appropriately so, of his own interests."[9] Further, she stated that Vinieris's behavior during her first examination of him was "so melodramatic ... and almost so defective, that its genuineness had to be questioned" and was not "suggestive of schizophrenia, but seem[ed] more hysterical and contrived." She also noted that this behavior was "most inconsistent" with Vinieris's Grand Jury testimony.[10] At a hearing, she testified that in her opinion Vinieris was neurologically normal with the exception of dizziness, which did not amount to an organic mental condition. She further testified that a great deal of defendant's conduct during her first examination of him was exaggerated and feigned.[11]

Thereafter, at the close of the Government's case, the Court was advised that Vinieris upon the trial would not, as is his right, testify in his own defense but would rely in part upon the expert opinion of Dr. Driesen. Thus, the jury, without the benefit of defendant's testimony or demeanor, would be confronted with a "battle of experts," each of whom would postulate a different and conflicting opinion based upon interviews with the defendant, a reading of his Grand Jury testimony, and historical medical records. The focus of the case could readily be shifted from the jurors' basic fact-finding function of ascertaining Vinieris's intent based upon his statements and conduct and all the surrounding circumstances at the relevant times to a consideration and evaluation of the experts' conflicting views. With Dr. Driesen's own position somewhat ambivalent and self-contradictory, this Court is of the view that, even assuming the proffered testimony is relevant to the particular issues of intent presented by the charges against Vinieris, the testimony would serve to confuse rather than clarify issues to be considered by

---

6. Report of Jerome E. Driesen, M.D., November 12, 1984, at p. 5; Report of Naomi Goldstein, M.D., February 22, 1985, at pp. 7–8.

7. Hearing of Feb. 6, 1985, at pp. 61–62.

8. *Id.* at p. 62.

9. Goldstein Report, at p. 7.

10. *Id.* at p. 8.

11. Hearing of Feb. 28, 1985, at pp. 2016, 2021–24.

the jury. The fact determination on the issue of specific criminal intent is for the jury. The presentation of the sharply contrasted views, and indeed the uncertain view of Dr. Driesen, would impede the proper fact-finding function of the jury. As the Supreme Court has stated,

expert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge "if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation." [12]

Accordingly, the defendant's proffer of psychiatric testimony is denied upon the ground that it would not assist the trier of fact to understand the evidence or to determine a fact in issue and that, even if relevant, its probative value is substantially outweighed by the danger of confusion of the issues or of misleading the jury.[13]

So ordered.

---

**12.** *Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962) (quoting *United States Smelting Co. v. Parry,* 166 F. 407, 415 (8th Cir.1909)).

**13.** Fed.R.Evid. 403, 702.