**UNITED STATES of America,**

v.

**Gerassimos VINIERIS, Defendant.**

**SSS 83 Cr. 68 (EW).**

United States District Court,
S.D. New York.

April 12, 1985.

---

See also, D.C., 595 F.Supp. 88.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City, for the U.S.; Robert Garcia, Asst. U.S. Atty., New York City, of counsel.

Schulman & Laifer, Brooklyn, N.Y., for defendant; Barry E. Schulman, Brooklyn, N.Y., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant Gerassimos Vinieris, found guilty on all three counts in which he was named in an indictment with others, moves pursuant to Rule 29, Fed.R.Crim.P., after the discharge of the jury for judgment of acquittal or for a new trial under Rule 33. He contends: (1) as to all three counts the Government failed to carry its burden of proof that it made no use, direct or indirect, of his immunized testimony before the Grand Jury as required under *United States v. Kastigar;* [1] (2) as to Count Five, interstate transportation of stolen property, there was no evidence upon which the jury could have found that any illegal act of the defendant occurred from, through, or into the Southern District of New York as the venue statute requires; and (3) as to Count One, the conspiracy count, there was insufficient credible evidence that defendant was a participant in the conspiracy. We consider each of these contentions separately.

## THE CLAIM WITH RESPECT TO THE USE OF IMMUNIZED TESTIMONY

Prior to trial, Vinieris moved to dismiss the indictment upon the ground that it and the evidence to be used against him at trial were obtained through the use of his immunized testimony before the Grand Jury on July 13 and 22, 1983. In considering that motion, it was recognized that while the Government was free to prosecute him it had "the affirmative duty to prove that the evidence it proposes to use against him upon the trial is derived from a legitimate source wholly independent of Vinieris's compelled testimony." [2] The Court observed that

> [w]hether or not [this burden is met by the Government] may require a hearing, or the trial itself may establish the Government's position and obviate the need for a hearing. Whether or not a hearing is required in the instant case, it would best be deferred until after the trial ... at which time a proper evaluation could be made as to whether in fact the evidence offered was obtained from wholly independent sources.... Accordingly, Vinieris may renew his motion for a "taint" hearing after the trial, if necessary.[3]

After a trial of nearly four weeks' duration, Vinieris moves to vacate the conviction upon a claim that the Government failed to sustain its burden under *Kastigar.* Upon a consideration of the defendant's renewed argument in support of his contention and a complete review of the entire trial transcript consisting of more than 2500 pages of testimony, the Court concludes that the Government has sustained its burden of proof.

Vinieris's claim of the use of "tainted" evidence upon the trial is directed toward two items of evidence. First, he contends that financial information derived and compiled from nine bank accounts and five certificates of deposit maintained by him in his name and the names of his mother, wife, and a corporation of which he was the controlling stockholder, showing that he made net deposits in excess of $500,000 between February 9 and June 10, 1983—that is, from about the time Vinieris picked up, as the Government charges, two

1. 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

2. *United States v. Gregory,* No. SSS 83 Crim. 68, slip op. at 17 (S.D.N.Y. Jan. 28, 1985) (citing *Kastigar,* 406 U.S. at 461–62, 92 S.Ct. at 1665–66).

3. *Id.* at 18, 19.

trunks containing a portion of the stolen Sentry money at the Iakovidis residence to the day he was first questioned by FBI agents—was obtained and interpreted by the Government on the basis of Vinieris's immunized testimony. Specifically, Vinieris claims that, although the Government may have subpoenaed the bank records before he gave his immunized testimony, it developed the significant information from his immunized testimony so that, as his counsel argued, "the cash flow from those accounts only became apparent as a result of the immunized testimony."[4]

With respect to this alleged taint by the use of the bank records, the Court interrupted the trial proper and conducted a hearing outside the presence of the jury. The evidence established that although the Government received documents from the bank on a continuing basis after Vinieris testified under a grant of immunity, these records were obtained pursuant to two Grand Jury subpoenas served on June 14 and 20, 1983, several weeks *before* Vinieris appeared before the Grand Jury on July 13, 1983 and, after asserting his Fifth Amendment privilege, was granted immunity and testified.[5] FBI Agent Walter Carroll, who analyzed the bank records upon which the summary charts and his interpretation of the evidence were based, swore that he never read Vinieris's Grand Jury testimony. He further swore that apart from the bank records themselves—the first of which he received from FBI Agent Coleman, who was in charge of the investigation, and the rest of which he thereafter obtained directly from the bank—he received no information whatsoever from any Assistant United States Attorney, any FBI Agent, or any other governmental individual, and that he prepared the materials and summary charts in reliance solely upon those documents.[6] At the conclusion of that hearing, during which Carroll was

cross-examined by defense counsel, the Court ruled that the Government had sustained its *Kastigar* burden beyond a reasonable doubt and that the financial information was admissible.[7] Nothing has been presented on this post-verdict motion that requires reconsideration and change of that ruling or a further hearing.

The second item of evidence which the defendant challenges relates to the Grand Jury testimony of E.T. Barwick and Mr. & Mrs. Max Crawford, none of whom was called as a trial witness by the Government or the defendant. Vinieris contends that his immunized testimony led to the disclosure of the identity of these witnesses and so to their Grand Jury testimony, of which he claims the Government made direct or indirect use against him or which he claims was otherwise prejudicial to him. His challenge with respect to E.T. Barwick can readily be disposed of since it appears that as of June 10, 1983, more than a month before Vinieris gave his immunized testimony to the Grand Jury, Vinieris had already informed FBI agents of his business dealings with E.T. Barwick.[8]

With respect to the Crawfords, it does appear that their names were obtained by the Government during the course of Vinieris's immunized testimony. However, the Government denies the use, direct or indirect, in any respect, of their Grand Jury testimony. It categorically denies that their Grand Jury testimony was the source of any evidence or any information that led to evidence that played any part in the investigation or in the case presented against defendant.

The Crawfords' Grand Jury testimony is not before the Court. Although the defendant asserts he was without knowledge of the substance of their testimony, he claims that it must have been the source of or led to evidence or information used by the Government, the nature of which is not

---

**4.** Record at 1882; Schulman post-trial affidavit at 11.

**5.** *Id.* at 1881–83, 1887–88, 1931–33, 1943–44, 1951.

**6.** *Id.* at 1919, 1957–58.

**7.** *Id.* at 1962.

**8.** *See id.* at 1519.

stated. Vinieris contends that without access to the Grand Jury minutes he cannot specify matters to substantiate his claim. The Government's response is twofold: first, having decided not to call the Crawfords as trial witnesses, it was not required to provide the defendant with their Grand Jury testimony either under Rule 16 of the Federal Rules of Criminal Procedure or 18 U.S.C. § 3500;[9] and second, it urges that at no time either before or during the trial did defendant make any showing of a "particularized need" for disclosure of their Grand Jury testimony as required under Rule 6(e).[10]

The Crawfords were no strangers to Vinieris. They were his close personal friends. He and his counsel were aware in advance of trial that they had testified before the Grand Jury. As witnesses, they were under no restraint from disclosing the nature or substance of their testimony.[11] Defense counsel had interviewed them "at length"[12] and made no motion to obtain their Grand Jury testimony as permitted under Rule 6(e)(3)(C)(i).[13] Now the defendant argues that he was foreclosed from using the Crawfords' testimony upon the trial proper because, asserting he was unaware of the nature of their Grand Jury testimony,[14] these potential witnesses were "compromised so that they could not ... be used as witnesses by the defendant" and the Government by reason of its knowledge of their Grand Jury testimony was able to "anticipate possible defenses."[15] Vinieris further contends that he refrained from calling the Crawfords as character witnesses because their Grand Jury testimony might have been used by the Government for purposes of cross-examination. Upon argument of this motion, counsel stated that after an extensive interview of the Crawfords he was of the view "[t]hey would have been wonderful character witnesses" but decided not to call them since, without knowing their precise Grand Jury testimony, to do so "would have just opened a Pandora's box."[16]

This claim is pure conjecture and without substance. The fact is that, after the Government rested, at no time did the defendant indicate that he proposed to call the Crawfords to testify, whether as character witnesses or otherwise, and was deterred from doing so because he lacked knowledge as to the nature of their Grand Jury testimony. Nor did Vinieris make any application to the Court to obtain the minutes of the Crawfords' Grand Jury testimony. In response to this Court's questioning on the argument of the motion, counsel gave vague answers as to what the substance of the Crawfords' proposed trial testimony might have been. There is not an iota of factual matter before the Court to suggest the nature of evidence that the Crawfords could have offered that was foreclosed from use upon the trial.

In sum, the claim made upon the argument of this motion that Vinieris was precluded upon the trial from calling the Crawfords as witnesses because they had previously been questioned before the Grand Jury is specious. The decision not

---

9. The Government's reliance upon *United States v. Percevault*, 490 F.2d 126 (2d Cir.1974), for this proposition is questionable. *See United States v. Klauber*, 611 F.2d 512, 515 (4th Cir.1979), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980); *United States v. Shoher*, 555 F.Supp. 346, 353 (S.D.N.Y.1983).

10. *See Dennis v. United States*, 384 U.S. 855, 869–70, 86 S.Ct. 1840, 1848–49, 16 L.Ed.2d 973 (1966).

11. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 3138–39, 77 L.Ed.2d 743 (1983); Fed.R.Crim.P. 6(e)(2).

12. Hearing of April 2, 1985 at 5.

13. *See Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); *see also United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) (access to Grand Jury minutes for use in civil litigation).

14. The suggestion that the defense was unaware of the substance of the Crawfords' testimony strains credulity. *See* hearing of April 2, 1985 at 7.

15. Schulman post-trial affidavit at 13.

16. Hearing of April 2, 1985 at 6, 7.

to call them was a calculated and deliberate act made by experienced counsel. Indeed, counsel acknowledged that his decision not to call the Crawfords as trial witnesses was also due to "their obvious reluctance to become involved," from which he concluded "it was just clear they would make very frightened and very poor witnesses."[17] Nor is there anything before the Court even suggesting how the Government's categorical representation that none of the evidence it offered upon the trial in support of its case was derived directly or indirectly from the Crawfords' Grand Jury testimony might be questioned. Under these circumstances, there is no basis upon which to conduct a post-trial *Kastigar* hearing.

## FAILURE TO ESTABLISH AN ACT WITHIN THE SOUTHERN DISTRICT

The defendant next contends that the prosecution failed to introduce evidence to indicate, or from which it could have been inferred, that defendant engaged in interstate transportation of stolen property from, through, or into the Southern District of New York, as required by the venue statute, 18 U.S.C. § 3237(a). Since the offense charged under Count Five is a "continuing offense" under the venue statute, the Government must prove "by a preponderance of the evidence that 'any part of the crime was committed within the [Southern D]istrict.'"[18] Venue may be proved by circumstantial evidence.[19] The indictment charges that Vinieris picked up two trunks containing stolen Sentry funds at the Iakovidis residence in Queens, New York (Vinieris denied knowledge of the illicit nature of the funds and contended that he picked up only one trunk), which is within the Eastern District, and transported at least one trunk containing the money first to his apartment in Brooklyn, also in the Eastern District, and then to his new apartment in Hackensack, New Jersey, in the District of New Jersey. Thus, the venue requirement would be satisfied if there were sufficient evidence upon which a jury could find by a preponderance of the evidence that Vinieris passed through Manhattan, in the Southern District, when he transported the Sentry money from his Brooklyn apartment to his new Hackensack apartment.

The charge to the jury did not contain a specific instruction on venue. However, the Court read to the jury that portion of Count Five of the indictment which charged that Vinieris committed the transportation offense in the Southern District of New York, and previously, in its instruction to the jury under the conspiracy count, the Court noted parenthetically "that Manhattan and the Bronx are both within the Southern District of New York" and again, with respect to the overt acts charged thereunder, made reference to "the Southern District of New York, which, as I have already told you, includes Manhattan and the Bronx."[20]

Vinieris does not direct his motion to the charge nor did he submit a specific request for an instruction on venue. Rather, he attacks the sufficiency of the evidence on the venue issue. The rule in this circuit is that a venue objection is waived "'when, after the government has concluded its case, the defendant specifies grounds for acquittal but is silent as to venue.'"[21] Vinieris's counsel, at the close of the entire case, moved pursuant to Fed.R.Crim.P. 29 for judgment of acquittal on the three

---

**17.** *Id.* at 6.

**18.** *United States v. Potamitis,* 739 F.2d 784, 791 (2d Cir.) (quoting *United States v. Panebianco,* 543 F.2d 447, 455 (2d Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977)), *cert. denied,* 105 S.Ct. 297, 332, 83 L.Ed.2d 232 (1984).

**19.** *United States v. Gargiso,* 456 F.2d 584, 588 n. 5 (2d Cir.1972).

**20.** Record at 2652, 2678, 2693.

**21.** *United States v. Menendez,* 612 F.2d 51, 55 (2d Cir.1979) (quoting *United States v. Price,* 447 F.2d 23, 27 (2d Cir.), *cert. denied,* 404 U.S. 912, 92 S.Ct. 232, 30 L.Ed.2d 186 (1971)); *see Potamitis,* 739 F.2d at 791; *United States v. Boney,* 572 F.2d 397, 400 (2d Cir.1978).

counts in which his client was named solely upon the grounds of insufficient evidence, failure by the Government to sustain its burden under *Kastigar*, and violation of Vinieris's right to confront witnesses against him; significantly, no venue claim was urged or mentioned.[22] Also, Vinieris made no motion of any kind, let alone one based on the venue claim now advanced, at the close of the Government's case-in-chief.[23] The first reference to the omission of a specific venue instruction came following the charge to the jury, when counsel objected to the failure to charge.[24]

The failure of defense counsel "specifically [to] articulate[ ]" improper venue as a basis for a judgment of acquittal at the close of either the Government's or the entire case constituted a waiver of the issue,[25] and that waiver was not cured by the exception following the charge. But even if Vinieris did not waive the issue, it was within the Court's discretion to decline to give a venue charge, "even had one been properly formulated and timely proposed," where, as here, there was substantial evidence to support a finding that venue was proper.[26] As already noted, the jury was instructed twice that Manhattan was within the Southern District of New York. The jury, based on common knowledge as to methods of travel by vehicle from the Metropolitan New York area to New Jersey, could reasonably have found that Vinieris, in transporting stolen money from his apartment in Brooklyn to his new home in Hackensack, New Jersey, of which there was substantial evidence, travelled through Manhattan, via the Holland or Lincoln Tunnel or the George Washington Bridge. Since the standard of proof on the venue issue is only a preponderance of the evidence,[27] and since on this motion the evidence must be viewed in the light most favorable to the Government,[28] the challenge to the alleged deficiency of evidence to support venue is denied.

## THE ALLEGED INSUFFICIENCY OF EVIDENCE THAT VINIERIS WAS A MEMBER OF THE CONSPIRACY

 Finally, Vinieris alleges that there was insufficient nonhearsay evidence to link him to the conspiracy, a contention the Court rejected when a motion was made for a verdict of acquittal at the close of the entire case. Nothing has been presented on this application that requires a different disposition. A defendant making an insufficiency claim bears a "very heavy burden."[29] "The verdict of a jury must be sustained if there is substantial evidence ... to support it," and the evidence must be viewed in the light most favorable to the Government[30] and all reasonable inferences must be drawn and all issues of credibility must be resolved in favor of the jury's verdict.[31]

The "independent" evidence included Vinieris's own statement to FBI agents that he picked up one trunk containing cash at the Iakovidis residence in February 1983;[32] Gabriel Iakovidis's testimony that a man picked up two trunks from his house in the dead of night, just before one a.m., in Feb-

22. Record at 2284–89.

23. *Id.* at 2183.

24. *Id.* at 2739.

25. *See United States v. Grammatikos*, 633 F.2d 1013, 1022 (2d Cir.1980).

26. *See id.* at 1023.

27. *Potamitis*, 739 F.2d at 791.

28. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Carson*, 702 F.2d 351, 361 (2d Cir.), cert. denied, 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983).

29. *United States v. Soto*, 716 F.2d 989, 991 (2d Cir.1983).

30. *Glasser*, 315 U.S. at 80, 62 S.Ct. at 469; *Carson*, 702 F.2d at 361.

31. *United States v. Young*, 745 F.2d 733, 762 (2d Cir.1984); *United States v. Bargaric*, 706 F.2d 42, 64 (2d Cir.), cert. denied, ── U.S. ──, 104 S.Ct. 133, 134, 283, 78 L.Ed.2d 128 (1983); *Carson*, 702 F.2d at 361.

32. Record at 1480–82, 1510–11.

ruary 1983;[33] Vinieris's explanation to the FBI agents that the cash was to be used to finance a rice deal,[34] which William Conner testified never was consummated;[35] the fact that some of the money Vinieris took from the Iakovidis residence contained bills traceable to Waldbaum's Supermarkets and thus to Sentry;[36] plus statements Vinieris made during the course of a recorded conversation with Gerassimos Pavlatos.[37] Moreover, the jury could readily have found that Vinieris made false exculpatory statements when he told the FBI agents he picked up one and not two trunks and that the cash in the one trunk was in connection with a rice deal. This evidence was more than sufficient to meet the *Geaney* test of a "fair preponderance of the evidence independent of the hearsay utterances" and for the jury to pass upon whether or not Vinieris participated in the conspiracy.[38] Thus, the jury could also consider the hearsay evidence, which included Eddie Argitakos's testimony that Pavlatos told him Vinieris was helping Pavlatos to get the Sentry loot out of the country to Switzerland.[39] When all the evidence, hearsay and nonhearsay, is considered, the jury reasonably could have found beyond a reasonable doubt that the conspiracy charged existed and that Vinieris was a participant in it. Moreover, even if the Government asserted that Vinieris stole the money from the other conspirators, there is still sufficient evidence that Vinieris did not do so until after he participated in the conspiracy by helping Pavlatos to move the money from the Iakovidis residence.[40] Again, the governing standard is "substantial" evidence, "taking the view most favorable to the Government" and drawing all reasonable inferences in its favor.[41] Accordingly, the motion is denied.

So ordered.

33. *Id.* at 1361–62, 1366.

34. *Id.* at 1481, 1549–52.

35. *Id.* at 1440.

36. *Id.* at 1700.

37. *See* Government's exhibits 948, 948–A.

38. *United States v. Geaney,* 417 F.2d 1116, 1120 (2d Cir.1969), *cert. denied,* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970).

39. Record at 460–65.

40. *See id.* at 460–65, 1486.

41. *Young,* 745 F.2d at 762; *Carson,* 702 F.2d at 361.