UNITED STATES of America,

v.

Christos POTAMITIS, Defendant.

UNITED STATES of America,

v.

Eddie ARGITAKOS, Defendant.

Nos. 86 Civ. 8807, SS 83 Cr. 68.

United States District Court,
S.D. New York.

Aug. 5, 1987.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for U.S.; Robert Garcia, Asst. U.S. Atty., of counsel.

Gerald B. Lefcourt, New York City, Alan Ellis, Peter Goldberger, Ellis and Newman, P.C., Philadelphia, Pa., for defendant Christos Potamitis.

Ginsberg & Katsorhis, Flushing, N.Y., for defendant Eddie Argitakos; Kerry J. Katsorhis, of counsel.

EDWARD WEINFELD, District Judge.

Eddie Argitakos and Christos Potamitis were convicted in December 1983 after a seven-week jury trial of conspiracy, bank larceny, interstate transportation of stolen property and other offenses. Potamitis was also convicted of making fraudulent statements to the FBI, perjury before the grand jury and obstruction of justice. Steve Argitakos, father of Eddie, was convicted as an accessory after the fact. Demetrios Papadakis was acquitted. The crimes centered about a staged or phony hold-up at the Sentry Armored Courier Corporation ("Sentry") on December 12, 1982, where Potamitis had been employed as a guard. The amount of the theft has been stated at various times generally to be in the sum of $11,000,000 in currency, checks, food stamps and money orders, of which to date approximately $1,500,000 of the stolen funds has been recovered from five locations. The Court imposed upon the defendants Eddie Argitakos and Christos Potamitis, under the different counts, sentences that totalled fifteen years. Steve Argitakos was sentenced to a term of four years.

The convictions were affirmed upon appeal.[1]

Also named in the original indictment was Nicholas Gregory, who was a fugitive at the time of the defendants' trial, but who was apprehended in September 1984, and was thereafter tried under a superseding indictment with Gerassimos Vinieris and others not named in the original indictment, but charged with offenses also arising out of the Sentry theft.[2] Eddie Argitakos and Potamitis, following Gregory's arrest, entered into cooperation agreements with the government. Argitakos testified as a witness at the Gregory-Vinieris trial and gave a detailed description of the origin, planning, preparation, execution of the crime, the counting, distribution of the proceeds and acts of concealment and conduct of the participants. Gregory and Vinieris were convicted. Vinieris moved post conviction for a judgment of acquittal under Rule 29 and for a new trial under Rule 33, Fed.R.Crim.P., which motions were denied.[3] Gregory was sentenced to a term of eighteen years imprisonment, and Vinieris to a term of fifteen years. The judgments of conviction were affirmed without opinion.[4]

Thereafter Argitakos and Potamitis moved under Fed.R.Crim.P. 35(b) for a reduction of their sentences based upon their cooperation with respect to the Gregory-Vinieris trial. On May 29, 1985, the Court granted their respective motions to the extent of reducing the sentence of each to twelve years.[5] Eighteen months later, in November 1986, Argitakos and Potamitis made the instant motion to vacate, set aside and correct the original sentences for alleged inaccuracies in the presentence report, to wit: (1) that defendants were connected with organized crime and organized

---

1. *United States v. Potamitis,* 739 F.2d 784, 786 (2d Cir.), *cert. denied,* 469 U.S. 918, 934, 105 S.Ct. 297, 332, 83 L.Ed.2d 232 (1984). Familiarity is assumed with other opinions discussing various aspects of the case and defendants' contentions with respect thereto: *United States v. Papadakis,* 572 F.Supp. 1518 (S.D.N.Y.1983); *United States v. Potamitis,* 564 F.Supp. 1484 (S.D.N.Y.1983).

2. *See United States v. Gregory,* 611 F.Supp. 1033 (S.D.N.Y.1985); *United States v. Vinieris,* 611 F.Supp. 1046 (S.D.N.Y.1985).

3. *United States v. Vinieris,* 606 F.Supp. 1390 (S.D.N.Y.1985).

4. *United States v. Vinieris,* 779 F.2d 40 (2d Cir. 1985).

5. *United States v. Potamitis,* 609 F.Supp. 881 (S.D.N.Y.1985).

crime figures; (2) that the currency and valuables stolen from Sentry was $11,105,-039.92; (3) that 200 employees of Sentry lost their jobs as a result of the theft and Sentry was no longer conducting business; and (4) that although the Court asked whether there were any specific comments that counsel desired to make with respect to the presentence report, it did not afford the defendants an opportunity to comment on the report as required by Fed.R.Crim.P. 32(c)(3)(A) as to any alleged factual inaccuracy. The petitioners do acknowledge that the Court, pursuant to Fed.R.Crim.P. 32(c)(3)(D)(ii) stated that the matters regarding their alleged connections with organized crime and crime figures would not be taken into account at sentencing, but allege the Court inadvertently omitted to make a written record of such determination to be appended to and accompany any copy of the presentence report, thereafter to be made available to the Bureau of Prisons and the United States Parole Commission, as required by Fed.R.Crim.P. 32(c)(3)(D). Further, it is alleged the Court made no finding as to other alleged inaccuracies in the report; specifically, as to the exact amount stolen and the loss of Sentry employees' jobs as a result of the theft.

█ Preliminarily, it is noted that none of the claims now advanced was raised either upon petitioners' direct appeal from the judgments of conviction and the sentences imposed thereunder; nor were the claims presented when petitioners successfully moved for and obtained a three-year reduction of sentence. Accordingly, the Court holds that petitioners, by their failure to do so, waived their claims, all or which were then known to them, particularly since the Court granted relief upon their applications for reduction.[6] With respect to the reductions of sentence Argitakos and Potamitis, in a joint letter to this Court dated June 5, 1985, stated, among other matters, "... We would like to take this opportunity to express our gratitude for your Honor's consideration on such motion."

█ But more important, this Court finds that the claims now advanced are without merit and are belied by the record. At the time of sentencing the Court expressly stated, not once, but several times, that it would not take into account matters controverted by counsel, particularly the references to the alleged connection of the defendants with organized crime and crime figures.[7] Petitioners also assert that the Court failed to make a specific finding as to the exact amount stolen and the loss of the Sentry employees' jobs as a result of the theft. This borders on the frivolous. The precise dollar amount of the theft was never disclosed by the participants. However, it was stated at various stages of the trial that the total amount stolen, which included, in addition to currency, checks, drafts, food stamps and money orders, was approximately $11,000,000, with the cash estimated to be some $8,000,000 or $9,000,-000. The exact amount of cash was known only to these petitioners and their co-conspirators, who counted the cash after the theft at the home of one of them and arranged for a distributive share to each partner. Argitakos, Gregory and Papadakis (except Potamitis, who presumably was bound and gagged at the Sentry premises in the faked holdup) went to the Papadakis home in Norwalk, Connecticut, after the theft, where they spent many hours counting the loot to determine the equal distributive share of each co-conspirator, including that of the absent Potamitis. After the conspirators had spent many hours counting the cash, Gregory remarked that the total cash came to approximately $9,000,-000, something short of $10,000,000, and mentioned "we had broken some kind of a record."[8] Gregory, Argitakos and Papadakis threw away money straps, receipts, checks, food stamps and other proceeds of

---

**6.** *Ward v. United States,* 633 F.Supp. 1336, 1339 (S.D.N.Y.1986). *Cf. United States v. Wright,* 524 F.2d 1100, 1102 (2d Cir.1975).

**7.** " '[R]equiring resentencing when the record is clear that the sentencing judge did not rely on a contested matter does not further the purpose of Rule 32(c)(3)(D).' " *United States v. Bradley,* 812 F.2d 774, 782 (2d Cir.1987) citing *United States v. Eschweiler,* 782 F.2d 1385, 1390 (7th Cir.1986).

**8.** Gregory trial minutes, p. 370.

the robbery they thought could be traced to the theft.[9] At the time of sentencing, this Court noted: "To date, over $1,000,000 has been recovered. Almost $8,000,000 remains unaccounted for, as does the balance of the proceeds of the robbery, that is, the food stamps and the checks. Each defendant up to the present has stonewalled. The location of more than $8,000,000 is unknown." When this Court granted the motions for reduction of sentence, it made reference to Eddie Argitakos' testimony at the Gregory trial and noted that Argitakos "disclosed the details of the planning and execution of the staged holdup, the division of more than $8,000,000 in currency, part of the proceeds, other details of the planning and execution of the staged holdup...." In these circumstances the petitioners' claim of lack of a specific finding as to the precise amount of the theft is fatuous.

Finally, the patent absurdity of the Court's alleged failure to make a specific finding as to the exact amount of the proceeds of the theft is demonstrated by a stipulation signed by all the defendants in the Argitakos trial, as well as their attorneys, and introduced into evidence at that trial. The stipulation specified that "if appropriate business records custodians and/or other representatives of customers of the Sentry Armored Courier Corporation whose property was stolen from Sentry's premises on the evening of December 12, 1982 were called as witnesses at trial," the testimony adduced would be that a total of $8,750,757.47 in currency, $1,856,096.58 in checks, $288,979 in food stamps, $199,293.91 in currency and checks, $9,911.26 in other property, for a grand total of $11,105,039.22, was stolen from Sentry. Whether the exact amount of cash was more or less than $8,000,000 or $9,000,000 makes about as much difference on the issue of sentence as a grain of sand in the Sahara Desert. There was never any suggestion that, within a month after the staged holdup, as a result Sentry went out of business. A Sentry official testified at the Argitakos-Potamitis trial that approxi- mately 160 to 170 employees lost their jobs when Sentry closed shop in January following the faked holdup. Not the slightest evidential matter has been submitted to challenge this trial testimony.

■ Potamitis's claim that he was unfamiliar with the presentence report and had not read it is again belied by the record. Several days prior to sentencing, Potamitis's trial counsel submitted a lengthy and detailed memorandum on his behalf. That statement leaves no room to doubt that Potamitis or his counsel had conferred about matters in the presentence report, since counsel's memorandum made detailed references to various portions of the presentence report. It is of significance that no affidavit is submitted by his counsel on this issue nor any explanation for its non-production.[10]

Each defendant, at the time of sentencing, was specifically asked not only if he desired to make any statement on his own behalf and present any information in mitigation of any sentence the Court might impose, but to "set forth any reason why the judgment of the Court should not be imposed upon you." Other than a plea for a lenient sentence, no claim was advanced by any of them, each resting upon his lawyer's statement.

■ Finally, petitioners are correct that, with respect to the Court's finding that rejected the statements in the presentence report of their alleged connection with organized crime and other matters and references would not be taken into account in sentencing, the Court omitted to make a separate written record of such determination other than as recorded in the sentencing minutes, to be appended to and to accompany the presentence report, as required by Fed.R.Crim.P. 32(c)(3)(D). The omission was a ministerial inadvertence. However, the information was fully set forth in the sentencing minutes, copies of which petitioners' trial counsel had upon their transcription and which their current counsel have had and have presented by them to the Parole Commission. A sepa-

---

9. Trial minutes 372–373.

10. *See United States v. Welton,* 439 F.2d 824, 826 (2d Cir.), *cert. denied,* 404 U.S. 859, 92 S.Ct. 157, 30 L.Ed.2d 102 (1971).

rate written record by the Court would add nothing to that record.

A fair reading of the sentencing record leaves no room to doubt that the presently alleged claims are virtually de minimis, and that the failure of the Court to direct that its rejection of petitioners' alleged identification with criminal elements be forwarded to the Parole Commission is of little, if any, consequence. The Court's rejection of the allegation is clear and unambiguous.

Overriding petitioners' miniscule and technical contentions,[11] the fact remains that both petitioners received a specific benefit under their cooperation agreement, and when their applications were made, remained entirely silent as to the matters now presented. Petitioners not only have suffered no injury, nor have any of their rights been violated, but in fact have become the beneficiaries of the plea agreement which was adhered to by the prosecution. The Court directs the Probation Office to forward a copy of this disposition to the Federal Bureau of Prisons and the United States Parole Commission.

The respective motions are denied.

So ordered.

---

**11.** *See United States v. Bradley,* 812 F.2d 774 (2d Cir.1987); *see also United States v. Navaro,* 774 F.2d 565 (2d Cir.1985) (per curiam) (no violation of Rule 32(c)(3)(D) when District Court explicitly disclaimed reliance upon alleged inaccuracies in his determination of sentence to be imposed), citing *United States v. Ibarra,* 737 F.2d 825, 827 (9th Cir.1984).