Harold Baer, J.
This is an action to recover for the conversion of two diamond bracelets. The plaintiff, a jeweler, shipped two diamond bracelets and other items by air express from its Miami, Florida, store to its office in New York City. The shipment was stolen by employees of Eastern Air Lines at Idlewild Airport. One of the employees, Richard Carasone, testified at the trial that he obtained the jewelry from a fellow employee named Leite who had removed the package containing the jewelry from the plane after it landed at Idlewild Airport. He further testified that he took the jewelry to the defendant Bletterman, who at the time was a used-car salesman. Bletterman and .Carasone thereafter took the jewelry to the defendant G-runfeld, a diamond cutter and Bletterman’s brother-in-law. The admitted purpose of taking the jewelry to G-runfeld was to have him sell it. G-runfeld, who also testified at this trial, stated that he was asked to sell the merchandise because Bletterman had a police record and would arouse suspicion if he attempted to sell the jewelry; that after making several fruitless attempts to .sell the bracelets, he was directed to an office in the diamond center, located at 62 West 47th Street, where he met the defendant Rubin and sold the. bracelets to him for the sum of $4,500.
Subsequently Bletterman, Grunfeld and Carasone were arrested by agents of the Federal Bureau of Investigation and indicted for receiving stolen property. Bletterman was convicted 'and sentenced to the Federal Penitentiary, where he is presently confined. Carasone pleaded guilty and received a suspended sentence. Grunfeld was convicted of receiving stolen property and received a suspended sentence. The defendant Rubin wa's arrested but to date has not been indicted.
Bletterman did not defend this action and Grunfeld, by his own testimony, admits participation in the conversion, but denies that he knew that the bracelets were stolen. The only open question is whether a case in conversion has been proved against Rubin.
At the trial, the question was raised as to adequacy of identification of the subject matter of this action. Carasone testified that he, in the company of Leite, opened the package addressed to the plaintiff and found two diamond bracelets as well as *342 other jewelry. He further identified the bracelets from photostatic pictures. Grunfeld also identified the bracelets from these exhibits, although he was not as positive of the identification as was Carasone. Finally, plaintiff’s manager testified that according to skipping documents which he received from the Miami, Florida, store, the bracelets so identified were shipped air express on the flight from which they were stolen. I find that there was sufficient evidence to establish the identity of the bracelets. Surely, there was enough evidence from which I could draw a reasonable inference that the bracelets referred to in Carasone’s and Grunfeld’s testimony were plaintiffs (Lamb v. Union Ry. Co., 195 N. Y. 260, 266; cf. Lopez v. Campbell, 163 N. Y. 340, 347-348).
The only link which ties Rubin to this transaction is the testimony of Grunfeld who positively identified Rubin as the man to whom he sold the bracelets and from whom he received $4,500. While his testimony was somewhat hazy and indefinite as to the physical description of the premises in which the sale took place, it was generally correct.
Rubin categorically denied ever seeing Grunfeld prior to his arrest by the F. B. I. agents. Rubin produced his secretary as a witness, who testified that the offices were kept locked at all times, as was the general practice in the jewelry exchange; that generally she admitted all visitors, but only if they were known to her or had been properly identified. She further testified that she never admitted Grunfeld into the premises and saw him for the first time when he appeared in the company of the F. B. I. agents. She did, however, admit that from time to time her duties took her out of the office or into the rear of the premises so that Grunfeld could have been admitted without her knowledge.
Rubin admitted two previous felony convictions; one for receiving stolen property, and the other for conspiracy to smuggle gold bullion into the United States.
I believe the testimony of Grunfeld and disbelieve that of Rubin. Rubin’s demeanor and lack of candor on the witness stand leave me with a substantial doubt as to the truth of his testimony. While I have no reason to doubt the testimony of Rubin’s secretary, she admitted that she was frequently out of the office or in the rear part of the premises and that persons could gain admission without her knowledge.
The uncontradicted testimony of the plaintiff’s manager on value was that cost of materials and manufacture was $11,560.75.
“ Conversion is any distinct act ¡of dominion wrongfully exerted over another’s personal property in denial of or incon *343 sistent with his rights therein ” (Meyer v. Price, 250 N. Y. 370, 381). Where a person exercises wrongful dominion over property, it is immaterial that he acted in good faith, for a “ wrongful intent is not an essential element of the conversion ” (Boyce v. Brockway, 31 N. Y. 490, 493; Pease v. Smith, 61 N. Y. 477, 480). The taking of property without right constitutes a conversion and no demand and refusal are necessary to render the defendant liable (Pierpoint v. Hoyt, 260 N. Y. 26, 29; Mullen v. Quinlan & Co., 195 N. Y. 109, 115). Finally, conversion may consist of wrongful detention as distinguished from wrongful taking (Pierpont v. Hoyt, supra). In such case, no formal demand for return is necessary where the person having possession, though lawfully in the first instance, is informed of the true facts (Employers’ Fire Ins. Co. v. Cotten, 245 N. Y. 102, 105).
To find Rubin liable for this conversion, it is not necessary to resolve every doubt. This being a civil action, plaintiff’s burden is to prove a case by a preponderance of the credible evidence and this plaintiff has done (Archer v. New York, New Haven & Hartford R. R. Co., 106 N. Y. 589, 601; Coutant v. Mason, 221 N. Y. 49, 53; Lamb v. Union Ry. Co., supra, p. 266; cf. Lopez v. Campbell, supra, pp. 347-348).
As previously stated, I am convinced that Rubin purchased the bracelets from Grunfeld. Rubin admitted that he was in the jewelry business all of his life and was thoroughly familiar with the value of precious stones. Placing ithis admission alongside of the other facts in this case: that the actual materials and manufacturing cost of the bracelets was $11,560.75; that there was no bill of sale; and that this was an all cash transaction, I must conclude that Rubin knew that he was not making a bona fide purchase. Surely, he should have been sufficiently alerted to know that there was something wrong, when he was offered the bracelets at a price much less than one half the actual manufactured cost.
Assuming, arguendo, that Rubin was a bona fide purchaser, he was guilty of conversion when he failed to return the bracelets after being informed of the facts by the F. B. I. agents (Employers’ Fire Ins. Co. v. Cotten, supra).
Judgment for the plaintiff against all defendants in the sum of $11,560.75, with interest from October 1, 1957. Plaintiff is entitled to enter judgment in accordance with section 826 of the Civil Practice Act, and body execution may issue in the event the monetary judgment is not paid.
Ten days’ stay. Sixty days to make a case.