FEDERAL INSURANCE COMPANY; Lloyds Underwriters; Sphere Insurance Co. Ltd.; Drake Insurance Co. Ltd.; Sphere Insurance Co. Ltd. "B" A/c.; Threadneedle Insurance Co. Ltd.; Andrew Weir Insurance Co. Ltd.; English & American Insurance Co. Ltd.; Nippon Fire & Marine Insurance Co. (U.K.) Ltd.; Norwich Union Fire Insurance Society Ltd. "Trust"; Norwich Union Fire Insurance Society Ltd. "Z" A/c. "Trust"; British Law Insurance Co. Ltd. No. 2 A/c.; Bishopgate Insurance Co. Ltd. "F" A/c.; British Law Insurance Co. Ltd.; Ocean Marine Insurance Co. Ltd.; Phoenix Assurance Co. Ltd.; Prudential Assurance Co. Ltd. "Trust" A/c.; Indemnity Marine Assurance Co. Ltd. "T" A/c.; Sovereign Marine & General Insurance Co. Ltd.; the Tokio Marine & Fire Insurance Co. (U.K.) Ltd.; Taisho Marine & Fire Insurance Co. (U.K.) Ltd.; Storebrand Insurance Co. (U.K.) Ltd.; Atlantic Mutual Insurance Co.; and Allianz International Insurance Co. Ltd., Plaintiffs,

v.

Eddie ARGITAKOS; Steve Argitakos; Christos Potamitis; George Legakis; and Nicholas Gregory, a/k/a "Nick," a/k/a "Nick the Greek," Defendants.

No. 83 Civ. 4618 (RJW).

United States District Court,
S.D. New York.

June 12, 1986.

Hendler & Murray, P.C. New York City, for plaintiffs; Jerome Murray, John Nocera, Warren S. Beckerman, Robert G. Post, Lee Shalov, Robert Wang, of counsel.

Ginsberg & Katsorhis, Flushing, N.Y. for Steve Argitakos; Kerry J. Katsorhis, of counsel.

Eddie Argitakos, pro se.

Christos Potamitis, pro se.

## ROBERT J. WARD, District Judge.

This civil action, founded upon diversity of citizenship, arises from the theft in December of 1982 of approximately $11 million from an armored car company's facility in The Bronx, New York. Plaintiffs move for summary judgment against defendants Eddie and Steve Argitakos and Christos Potamitis in the amount of $10,018,157.67 plus interest, costs and other disbursements. For the reasons that follow, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

This action concerns an elaborate robbery of the Sentry Armored Courier Corporation ("Sentry") in The Bronx, New York, on December 12, 1982. The Second Circuit Court of Appeals, affirming the criminal convictions of Eddie Argitakos, Steve Argitakos and Christos Potamitis, recounted the high points of the heist and subsequent law enforcement investigation:

> More than $11 million in currency and valuables was stolen, only about $1 million of which has been recovered to date. The evidence showed that Potamitis and Eddie Argitakos "staged" [the] robbery at Sentry on the night of December 12, 1982, when Potamitis was the only guard on duty. The alarm, which Potamitis was responsible for activating, did not sound. On the morning of December 13, Sentry's assistant vice president found Potamitis handcuffed to the railing of a staircase, the apparent victim of the robbery.
>
> Potamitis gave his account of the incident to New York City police officers and FBI agents. He stated that he had been surprised at his desk by two masked gunmen who took his gun, led him out of the office, and handcuffed him to the railing. He also testified before the grand jury on the matter, specifically asserting that he had properly set the alarm at the scheduled time on the evening of December 12, and was unaware that the system was not working properly. He denied any involvement in or prior knowledge of the theft. He stated that he had not let any unauthorized persons onto Sentry's premises, and knew neither the identity of the robbers nor the location of the missing money and valuables.
>
> At trial, the testimony of George Legakis and Lenny Cascio related a series

of conversations and meetings among Potamitis, Eddie Argitakos, Nicholas Gregory, and themselves, during which the robbery and concealment of its proceeds were planned. Two other key witnesses who had testified before the grand jury, Steve Panagopoulos and Gerrasimos Povlatos, failed to appear at the trial to testify. After evidentiary hearings, the district court determined that Steve Argitakos, Eddie Argitakos's father, was responsible for their unavailability and admitted their grand jury testimony as evidence against him. Panagopoulos had testified before the grand jury that Steve Argitakos shortly after the robbery had asked him to store a locked footlocker in his garage in East Greenbush, New York. After Eddie Argitakos was arrested, Panagopoulos had the footlocker delivered to federal authorities, who discovered almost $400,000 of money taken during the robbery.

*United States v. Potamitis*, 739 F.2d 784, 786–87 (2d Cir.), *cert. denied, Argitakos v. U.S.*, — U.S. — & —, 105 S.Ct. 297 & 332, 83 L.Ed.2d 232 & 269 (1984).

Eddie and Steve Argitakos and Christos Potamitis were indicted in the Southern District of New York on one count of conspiracy in violation of 18 U.S.C. § 371. Supplemental Affidavit of Jerome Murray (sworn to April 24, 1985) ("Murray Affidavit"), Exhibit J at 1–12. Eddie Argitakos and Potamitis were charged in addition with bank robbery in violation of 18 U.S.C. § 2113(b), with transportation of stolen goods in violation of 18 U.S.C. § 2314, and with the unauthorized acquisition and possession of food stamps in violation of 7 U.S.C. § 2024(b). *Id.* at 12–15. Steve Argitakos was charged separately with being an accessory after the fact, in violation of 18 U.S.C. § 3, in connection with the concealment of over $1 million stolen from Sentry. *Id.* at 15–16. Potamitis was indi-

vidually charged with giving false statements to F.B.I. officials, with making false declarations before a grand jury, and with obstruction of justice. *Id.* at 16–44.

After a jury trial held before Judge Edward Weinfeld, Eddie Argitakos and Christos Potamitis were found guilty on all counts brought against them. Steve Argitakos was acquitted on the general conspiracy count, but was convicted of having been an accessory after the fact. The Second Circuit subsequently affirmed these convictions in a published opinion, *United States v. Potamitis, supra*, 739 F.2d at 784. The United States Supreme Court denied *certiorari.* — U.S. — & —, 105 S.Ct. at 297 & 332, 83 L.Ed.2d 232 & 269.[1]

Nicholas Gregory, who had also been indicted in connection with the Sentry robbery, was a fugitive at the time of trial of the Argitakoses and Potamitis. He subsequently was apprehended and tried by Judge Weinfeld in a separate criminal proceeding. *United States v. Gregory*, 84 Cr. 68(EW) (S.D.N.Y.). At that trial, Eddie Argitakos testified as a prosecution witness concerning his participation in the Sentry heist.

Plaintiffs, Sentry's insurance carriers at the time of the 1982 robbery, now bring this civil action against Eddie and Steve Argitakos, Christos Potamitis, Nicholas Gregory and George Legakis[2] under common law theories of conversion and moneys had and received. Plaintiffs sue by virtue of the alleged assignment to them of claims of Sentry customers whom plaintiffs reimbursed following the 1982 robbery pursuant to the insurance policies then in effect between plaintiffs and the armored car company. In their amended complaint, filed March 22, 1984, plaintiffs seek damages of at least $10,018,157.67, the amount they allege to have paid Sentry customers as of that date, plus interest running from

---

1. Demetrios Papadakis, another defendant in the criminal action, was acquitted of all charges against him.

2. Legakis had testified at the trial of the first three defendants concerning several conversa-

tions and meetings during which defendants planned the Sentry robbery and subsequent concealment of the stolen proceeds. *See United States v. Potamitis, supra*, 739 F.2d at 787.

December 12, 1982, together with costs and other disbursements.

The instant action originally was stayed pending the outcome of the first criminal trial before Judge Weinfeld. Following that trial, plaintiffs moved for summary judgment against Eddie and Steve Argitakos and Christos Potamitis on the ground that their recent criminal convictions estopped those defendants from contesting liability on the claims raised in this civil action. The Court adjourned plaintiffs' motion pending defendants' appeal of their convictions and subsequent petitions for *certiorari.*

Following the Supreme Court's denial of *cert.* to defendants, this Court heard argument on plaintiffs' motion. At that time, the Court directed plaintiffs to supplement their submissions with additional information concerning the earlier criminal proceeding and the legal theories under which they sought relief. Prompted by concerns expressed by the two attorneys appearing at argument on defendants' behalf, the Court in addition directed those attorneys to communicate with their clients concerning whether they wished counsel to continue to represent them in this action. In conformity with their clients' wishes,[3] both attorneys subsequently withdrew from the case. New counsel has since appeared in the action on behalf of Steve Argitakos, the only defendant as yet released from prison, and has filed an affidavit in opposition to plaintiffs' motion on his client's behalf. Eddie Argitakos and Christos Potamitis, both of whom are still in federal custody, remain in the action *pro se.* Although granted additional time to do so, neither has filed any opposition to plaintiffs' motion on his own behalf.[4]

## DISCUSSION

The standard for granting summary judgment in a civil action is a familiar one. Summary judgment is appropriate only if the moving party can establish both that there are no genuine issues as to any material fact and that the movant is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. In ruling on such a motion, the Court must view the evidence in the light most favorable to the opposing party or parties. *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.,* 769 F.2d 919, 922 (2d Cir.1985). Attention to the rights of nonmoving parties is particularly important where, as here, at least some of those parties appear *pro se.*

On a motion for summary judgment, the Court's task is not to resolve disputed issues of fact, but to determine what issues, if any, remain to be tried. *Heyman v. Commerce and Industry Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975); *Lord Jeff Knitting Co., Inc. v. Warnaco, Inc.,* 594 F.Supp. 579, 580 (S.D.N.Y.1984). Although "[u]ncertainty as to the true state of any material fact [will] defeat[] the motion," *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor,"* 691 F.2d 603, 606 (2d Cir.1982), disputes over irrelevant facts may not obscure the absence of a material dispute. *Burlington Coat Factory, supra,* 769 F.2d at 923.

In the instant case, jurisdiction is founded upon diversity of citizenship. The Court therefore must apply the law of the forum state, New York, including the forum's choice of law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Hunter v. H.D. Lee Co., Inc.,* 563 F.Supp.

---

**3.** Because Eddie and Steve Argitakos were enrolled at the time in the Federal Witness Protection Program, their attorney, Joel Winograd, was unable to communicate directly with them, but forwarded letters to them by way of the United States Attorney's Office. Winograd received no response from either client. *See* Affidavit of Joel Winograd in Support of Motion for Leave to Withdraw at ¶ 3 (sworn to Aug. 28, 1985).

**4.** Before withdrawing their appearances, counsel for Christos Potamitis had served and filed a memorandum of law in opposition to the instant motion. The points raised in that memorandum were discussed at oral argument on plaintiffs' motion and are considered further by the Court *infra.*

1006, 1008 (N.D.N.Y.1983). Under New York's choice of law rules, the Court looks to the law of "the jurisdiction which, because of its relationship or contact with the occurrence or the parties[,] has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 191 N.E.2d 279, 283, 240 N.Y.S.2d 743, 749 (1963); *see also Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 196, 480 N.E.2d 679, 683, 491 N.Y.S.2d 90, 94 (1985). In the instant case, where both the relevant events and the parties have significant contacts with New York, there is little question but that New York substantive law should apply to the claims raised herein.[5]

Plaintiffs' central contention in the instant motion is that defendants are estopped from denying civil liability in this action by virtue of their prior criminal convictions for bank robbery and concealment of stolen goods. It is appropriate to begin, therefore, with a brief overview of the collateral estoppel principles applied by the New York courts.

## I. *Collateral Estoppel Under New York Law*

The doctrine of collateral estoppel, which is intended to reduce litigation and conserve the resources of both courts and litigants, rests upon the general notion that a party should not be permitted to relitigate an issue that has already been decided against it. *Kaufman v. Eli Lilly and Co.*, 65 N.Y.2d 449, 455, 482 N.E.2d 63, 67, 492 N.Y.S.2d 584, 588 (1985). The doctrine therefore precludes a party from relitigating any issue previously decided against it in a proceeding in which it had a fair opportunity to fully litigate the point. *Id.; Gilberg v. Barbieri*, 53 N.Y.2d 285, 291, 423 N.E.2d 807, 808, 441 N.Y.S.2d 49, 50 (1981);

*see Schwartz v. Public Administrator*, 24 N.Y.2d 65, 69, 246 N.E.2d 725, 728–29, 298 N.Y.S.2d 955, 958 (1969). In New York,

> [t]here are now but two requirements which must be satisfied before the doctrine is invoked. First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination. The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action.

*Kaufman, supra*, 65 N.Y.2d at 455–56, 482 N.E.2d at 67, 492 N.Y.S.2d at 588 (citations omitted); *see also Ottley v. Sheepshead Nursing Home*, 784 F.2d 62, 64 (2d Cir. 1986).

Mutuality of estoppel is no longer required in New York, and therefore issue preclusion can operate in favor of strangers to the original litigation. *GTF Marketing, Inc. v. Colonial Aluminum Sales, Inc.*, 108 A.D.2d 86, 89, 488 N.Y.S.2d 219, 223 (2d Dep't 1985); *see Koch v. Consolidated Edison Co. of New York, Inc.*, 62 N.Y.2d 548, 556–57, 468 N.E.2d 1, 5–6, 479 N.Y.S.2d 163, 167–68 (1984), *cert. denied*, — U.S. —, 105 S.Ct. 1177, 84 L.Ed.2d 326 (1985). At least one New York appellate court has suggested, however, that the doctrine should be applied flexibly where the party seeking to invoke collateral estoppel was not joined in the earlier action. *Such-*

---

**5.** It is undisputed that all three defendants were New York residents at the time of the Sentry theft, that the theft itself occurred in New York, that many if not most of the proceeds of the theft were stored at least temporarily in the state, and that defendants were tried and convicted by a federal district court within the forum. Admittedly, other jurisdictions have some contact with the instant litigation. Plaintiff Federal Insurance Company ("FIC"), for ex-

ample, alleges that it is a New Jersey corporation; the remaining plaintiffs allege that they are underwriters organized under the laws of the United Kingdom. In addition it would appear that some of the stolen property was transported to Connecticut. These contacts with other forums are relatively insubstantial, however, and would not justify application of the law of a forum other than New York.

er v. Kutscher's Country Club, 113 A.D.2d 928, 493 N.Y.S.2d 829, 833 (2d Dep't 1985).

The New York courts give preclusive effect to criminal as well as civil actions. Thus, a criminal conviction may be considered conclusive proof of its underlying facts in a subsequent civil suit. *S.T. Grand, Inc. v. City of New York*, 32 N.Y.2d 300, 304–05, 298 N.E.2d 105, 107–08, 344 N.Y.S.2d 938, 941–42 (1973); *Merchants Mut. Ins. Co. v. Arzillo*, 98 A.D.2d 495, 502, 472 N.Y.S.2d 97, 102 (2d Dep't 1984). Both the United States Supreme Court and the federal courts of this circuit have given similar preclusive effect to criminal convictions in later civil proceedings. *See, e.g., Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568–69, 71 S.Ct. 408, 414, 95 L.Ed.2d 534 (1951); *United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978); *United States v. Rapoport*, 514 F.Supp. 519, 522 (S.D.N.Y.1981); *Securities and Exchange Comm'n v. Dimensional Entertainment Corp.*, 493 F.Supp. 1270, 1274–75 (S.D.N.Y.1980); *cf. Kraftsman Container Corp. v. Finkelstein*, 461 F.Supp. 245 (E.D.N.Y.1978) (preclusive effect of prior criminal conviction denied on summary judgment motion where plaintiff sought to establish substantial conversion of corporate funds over five-and-a-half year period based on guilty plea to charges involving isolated transactions in small amounts).

In deciding whether to give preclusive effect to a prior criminal conviction, a court must of course determine what matters were necessary to the judgment of conviction. Where, for example, the criminal judgment rests on a general conspiracy count, the Supreme Court has instructed courts to examine "the record, including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts [that presided over or reviewed the criminal proceeding]." *Emich Motors, supra*, 340 U.S. at 569, 71 S.Ct. at 414; *see also Podell, supra*, 572 F.2d at 36. This approach has been followed to determine the preclusive effect of a judgment of conviction based on substantive criminal

counts as well. *E.g., Dimensional Entertainment Corp., supra*, 493 F.Supp. at 1274–75 (prior convictions for wire fraud and perjury).

## II. *Preclusive Effect of Defendants' Prior Convictions*

Applying these principles to the case at bar, the Court first will consider defendants' opportunity to litigate the matters in dispute in the prior criminal action, before turning to the more complicated question of whether the issues necessarily decided at defendants' criminal trial are the same as those presented in this lawsuit.

### A. Opportunity to Litigate in Earlier Criminal Action

Potamitis' counsel originally argued that he had not been given the opportunity to fully and fairly litigate his "personal involvement or culpability" in the prior criminal trial because of the "substantial spillover prejudice suffered by him as the result of the admission of certain Grand Jury testimony into evidence." Defendant Potamitis' Memorandum in Opposition at 3. When defendant raised the identical point on appeal of his conviction, however, the Second Circuit flatly rejected it as a ground for overturning defendant's conviction. *See United States v. Potamitis, supra*, 739 F.2d at 788–89. In view of the circuit panel's sound dismissal of Potamitis' "spillover prejudice" point on appeal, the same argument can scarcely merit serious consideration by this Court as a ground for denying preclusive effect to defendant's criminal conviction here.

All three defendants raised numerous objections on appeal of their convictions. The Second Circuit reviewed these points at length and, as previously indicated, found them all to be meritless. *Id.* at 787–92. In determining the preclusive effect, if any, that should be given defendants' convictions in this action, the Court of course need not pass on the various objections defendants previously aired on appeal. Rather, the Court must examine "the realities of [the prior] litigation" to satisfy itself

that each defendant "had his day in court." *Schwartz, supra*, 24 N.Y.2d at 72, 246 N.E.2d at 729, 298 N.Y.S.2d at 961. The circuit court's review of defendants' arguments on appeal nevertheless provides an indication in itself of the extent to which defendants pursued their available defenses at trial and thereafter.

Where, as here, the earlier proceeding encompassed a full criminal trial involving serious charges that carried potentially significant penalties, the New York courts readily have found that the defendants had both the opportunity and incentive to vigorously contest their criminal liability. *See, e.g., S.T. Grand, Inc., supra; see also Arzillo, supra* (preclusive effect given to judgment of conviction entered on guilty plea); *cf. Gilberg, supra* (City Court harassment conviction not given preclusive effect in later civil damage action in view of relative insignificance of the charge and brief, informal nature of City Court proceeding). The Court has no reason to doubt that defendants in this case had such opportunity and incentive in the earlier criminal action. The crimes with which they were charged were serious. The pen-

alties ultimately imposed were substantial. The Second Circuit's lengthy opinion affirming defendants' convictions leaves little doubt that defendants were afforded a fair trial. The numerous objections defendants raised on appeal—although ultimately adjudged to be meritless—confirm the vigor with which each defendant contested the criminal charges against him.

In short, the Court is satisfied that defendants had a full opportunity to fairly litigate the issues necessarily decided in the earlier criminal action. It remains to be determined, under the collateral estoppel principles set forth above, whether those issues are sufficiently identical to the elements of plaintiffs' civil damage claims to warrant giving preclusive effect to defendants' convictions in the present civil action. Specifically, the Court must examine the second superseding indictment, jury instructions, verdict, and other materials from the *Potamitis* trial and appeal in light of the elements necessary to establish plaintiffs' claims for common law conversion or, alternatively, for moneys had and received.[6]

---

**6.** In the opposition papers filed before they withdrew from the action, counsel for defendant Potamitis raised other objections to plaintiffs' collateral estoppel arguments that merit only brief discussion. It was argued, for example, that because plaintiffs were not parties to the prior criminal action, they should not be allowed to make offensive use of the criminal judgments entered there. Defendant Potamitis' Memorandum in Opposition at 2–3. As related above, however, the New York courts abandoned long ago the requirement of mutuality in applying collateral estoppel principles to both civil and criminal judgments. Likewise, the Supreme Court has rejected the mutuality doctrine and has sanctioned offensive use of collateral estoppel as long as the party invoking estoppel principles could not easily have joined in the earlier action and the application of offensive estoppel would not otherwise be unfair to the party against whom the estoppel is sought. *See Parkland Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326–28 & 331, 99 S.Ct. 645, 649–50 & 651, 58 L.Ed.2d 552 (1979). In view of these significant changes in the law of issue preclusion applied by both New York and federal courts, therefore, Potamitis' attempt to defeat the instant motion on the ground of lack of mutuality must fail. Another argument offered in opposition to plaintiffs' motion was that plaintiffs had failed

to join certain necessary and indispensable parties, *viz.,* two individuals named Vinieris and Meade, who were alleged to have been found in possession of certain proceeds of the Sentry theft. Defendant Potamitis' Memorandum in Opposition at 6. As defendant's counsel conceded in the memorandum itself, however, joint tortfeasors are not indispensable parties to a common law tort action within the meaning of Rule 19, Fed.R.Civ.P. *Picard v. Wall Street Discount Corp.*, 526 F.Supp. 1248, 1252 (S.D.N.Y. 1981); *see Kerr v. Compagnie De Ultramar*, 250 F.2d 860, 863 (2d Cir.1958); 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1623 at 241–42 (1972) ("7 Wright & Miller"). Failure to join one or more alleged joint tortfeasors—including co-conspirators—therefore would not require dismissal of plaintiffs' claims in this action. *See Tondas v. Amateur Hockey Ass'n of the United States*, 438 F.Supp. 310, 315–16 (W.D. N.Y.1977); *Martin v. Chandler*, 85 F.Supp. 131, 132 (S.D.N.Y.1949); 7 Wright & Miller § 1623 at 94 (1985 Supp.).

Potamitis also objected to the instant motion on the ground that a "final judgment" had not yet been entered in the criminal action on which plaintiffs' collateral estoppel argument relied, and that plaintiffs had supplied the Court with incomplete or inaccurate documentation from

## B. Identicality of Issues Raised in the Two Proceedings

The Court begins with a brief overview of the elements necessary to sustain plaintiffs' common law claims. An action for conversion will lie under New York law against one who has exercised control over property he or she is not entitled to possess so as to interfere with the right of possession of the individual or entity lawfully entitled to the property. *Glass v. Wiener*, 104 A.D.2d 967, 968, 480 N.Y.S.2d 760, 761 (2d Dep't 1984), *appeal dismissed*, 64 N.Y.2d 775 (1985); *Meese v. Miller*, 79 A.D.2d 237, 242–43, 436 N.Y.S.2d 496, 500 (4th Dep't 1981). An individual need not have taken physical possession of the property to be liable for conversion. *Glass, supra*, 104 A.D.2d at 968, 480 N.Y.S.2d at 761; *General Electric Co. v. American Export Isbrandtsen Lines, Inc.*, 37 A.D.2d 959, 327 N.Y.S.2d 93, 95 (2d Dep't 1971). "Interference with the right to possession is the essence of a conversion.... Any wrongful exercise of dominion by one other than the owner is a conversion.... It is sufficient if the owner has been deprived of his property by the defendant's unauthorized act in assuming dominion and control." *General Electric Co., supra*, 37 A.D.2d at 959–60, 327 N.Y.S.2d at 95 (citations omitted).

Conversion does not require proof of wrongful intention or bad faith on the part of the defendant. *Dwyer v. Citizens United Bank, N.A.*, 98 A.D.2d 954, 955, 470 N.Y.S.2d 200, 202 (4th Dep't 1983); *General Electric Co., supra*, 37 A.D.2d at 959, 327 N.Y.S.2d at 95; *Nat Koslow, Inc. v. Bletterman*, 23 Misc.2d 340, 197 N.Y.S.2d 583, 586 (S.Ct., N.Y.County 1960). Nor, when the defendant has acquired control of the goods unlawfully, does the plaintiff have to make a formal demand for return of the property before instituting a conversion action. *Mullen v. J.J. Quinlan Co.*, 195 N.Y. 109, 115, 87 N.E. 1078 (1909); *Nat Koslow, Inc., supra*, 197 N.Y.S.2d at 586;

23 N.Y.Jur.2d *Conversion* § 51 at 268–69 (1982).

These principles of conversion apply to the wrongful possession or control of money as well as chattel. *See, e.g., AMF Inc. v. Algo Distributors, Ltd.*, 48 A.D.2d 352, 356–57, 369 N.Y.S.2d 460, 464 (2d Dep't 1975); *Errico v. County of Westchester*, 39 Misc.2d 1090, 242 N.Y.S.2d 524 (Westchester County Ct. 1963); 23 N.Y.Jur.2d *Conversion* § 12 at 217–18. It is also noteworthy that a right of action for conversion may be assigned. *Zabriskie v. Smith*, 13 N.Y. 322, 332–33 (1855); *see Errico, supra;* 23 N.Y.Jur.2d *Conversion* § 40 at 255–56. An assignee must, of course, establish that the assignor had, at the time of the alleged conversion, an interest in the property in question that would have entitled it to immediate possession of the goods. *Errico, supra*, 39 Misc.2d at 1092, 242 N.Y.S.2d at 527.

Alternatively, on a claim under New York law for moneys had and received, a plaintiff must prove that "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 125 (2d Cir.1984); *see Federal Ins. Co. v. Groveland State Bank*, 37 N.Y.2d 252, 258, 333 N.E.2d 334, 336–37, 372 N.Y.S.2d 18, 21–22 (1975). Although plaintiffs may advance both claims for conversion and for moneys had and received in their complaint, they would be required in New York to elect to proceed on one or the other theory at the time of trial. *See Baratta v. Kozlowski*, 94 A.D.2d 454, 464, 464 N.Y.S.2d 803, 809–10 (2d Dep't 1983).

With this background, the Court turns to the particular claims plaintiffs raise in this action and press in the instant motion for summary judgment. Plaintiffs contend as

the relevant criminal proceedings. Assuming merit in these objections at the time they were made, they have since been rendered moot by the Second Circuit's affirmance and the Su-

preme Court's denial of *certiorari* in *United States v. Potamitis, supra,* and by plaintiffs' subsequent submission of additional materials relevant to the trial proceedings in *Potamitis.*

a general matter that the criminal convictions of Christos Potamitis and Eddie and Steve Argitakos preclude them from contesting their civil liability for conversion of cash and other goods stolen from Sentry's Bronx repository on December 12, 1982. With regard to Potamitis and Eddie Argitakos, plaintiffs rely specifically on Count II of the second superseding indictment, under which both defendants were convicted of bank robbery. As to Steve Argitakos, plaintiffs focus specifically on Count V of the same indictment, under which that defendant was found guilty of having been an accessory after the fact by having concealed some of the stolen money following the theft. Plaintiffs maintain that defendants' convictions under these counts establish Potamitis' and Eddie Argitakos' conversion of $10,018,157.67, and Steve Argitakos' conversion of $392,000. Because the Court reaches different conclusions on the issues of liability and damages, it will examine these elements of plaintiffs' claims separately.

### 1. Liability

There is little question but that defendants' convictions for bank robbery and concealment of stolen money establish their civil liability for conversion of the goods that were stolen or concealed. Title 18 of the United States Code, § 2113(b), defines the crime of bank robbery and its corresponding penalties as follows:

> Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both....

Having been convicted of robbing a Sentry repository in violation of 18 U.S.C. § 2113(b), defendants Potamitis and Eddie Argitakos cannot very well dispute that they wrongfully exercised control over the goods they stole from Sentry's vaults, the essence of a civil action for conversion.

Similarly, Steve Argitakos cannot in good faith contest his civil liability for conversion in view of his conviction for having assisted in the Sentry robbery by concealing a portion of the stolen goods. Count V of the second superseding indictment, under which Argitakos was found guilty, charged that he "did cause to be hidden, concealed, secreted and protected from discovery by law enforcement authorities, ... a sum of United States currency in excess of $1 million which had been stolen from the premises of Sentry ... on or about December 12, 1982." Murray Affidavit, Exhibit J at 16. At the time of sentencing, Judge Weinfeld observed that "[t]he [jury's] verdict ... indicate[d], and it cannot be challenged, that soon after the theft Steve Argitakos left a foot locker containing approximately $392,000 of the stolen money with Steve Panagopoulos, a witness," and that "[t]he evidence also [left] little room to doubt that Steve Argitakos played a role in the removal of almost $400,000 from the home [of] his friends, the Skiedases, where the money had previously been secreted by his son." Id., Exhibit N at 54.

The documents plaintiffs have supplied to this Court relating to the *Potamitis* trial and subsequent appeal plainly establish that all three defendants exercised wrongful control over at least some of the goods that disappeared from Sentry's vault on December 12, 1982. Because the issues necessary to the jury's determination of guilt under Counts II and V of the second superseding indictment in *United States v. Potamitis* are identical to the essential elements of a claim for conversion under New York law, defendants may fairly be precluded from contesting their civil liability in the instant action.

Plaintiffs have supplied the Court in addition with copies of releases and assignments executed by certain of Sentry's customers in consideration of payments made by plaintiffs to those customers to reimburse them for losses they suffered as a result of the December 12, 1982 theft. See Affidavit of John Nocera (sworn to May 29, 1984) ("Nocera Affidavit"), Exhibit D.

Those releases and assignments provide, *inter alia*, for the assignment to one or more plaintiffs of the customers' "rights, remedies, actions, claims, causes of action and choses in action against any and all persons, firms, corporations or entities who may have participated in, conspired, or contributed to the [customer's] loss" as a result of the Sentry theft.[7] Plaintiffs have supplemented these materials further with the affidavit and supporting documentation of a certified public accountant hired by plaintiff FIC to verify the losses claimed by Sentry's customers in connection with the December 1982 theft. Affidavit of Kenneth D. Aksman (sworn to April 23, 1985). These materials substantiate—and defendants do not dispute—plaintiffs' claims against defendants as assignees of the rights of Sentry customers whose property was wrongfully taken from Sentry's vaults on December 12, 1982.

■ In sum, then, the Court is satisfied on the basis of the record before it that defendants' prior convictions preclude them from contesting liability in this action for conversion of property owned by Sentry customers who have assigned to plaintiffs their rights to recover their losses from the Sentry theft on December 12, 1982. Because plaintiffs have established liability on their conversion claim, the Court finds it unnecessary to consider their alternative theory of liability for moneys had and received.

### 2. Damages

Plaintiffs' success on the issue of liability does not automatically entitle them to the damages they seek. The measure of damages in a conversion action is the value of the property at the time of the conversion, plus interest. *Fantis Foods, Inc. v. Standard Importing Co., Inc.*, 49 N.Y.2d 317, 326, 402 N.E.2d 122, 125, 425 N.Y.S.2d 783, 786 (1980); *Hoffman v. Dorner*, 86 A.D.2d 651, 447 N.Y.S.2d 20, 22 (2d Dep't 1982). In support of their damage claims against

the respective defendants, plaintiffs have submitted, *inter alia*, portions of the second superseding indictment in *United States v. Potamitis*, a stipulation entered into between the prosecution and defendants in that action, Judge Weinfeld's charge to the jury, selected minutes from defendants' sentencing, as well as the transcript of Eddie Argitakos' testimony as a prosecution witness in the subsequent trial of defendants' co-conspirator, Nicholas Gregory. The Court will review these items separately.

#### a. Stipulation

■ The stipulation entered into between the prosecution and defendants in *United States v. Potamitis*, in which those parties agreed for purposes of that proceeding to the value of certain property deposited with Sentry shortly before the December 12, 1982 robbery and not returned thereafter to Sentry's customers, may be discounted at the outset. The stipulation explicitly provided that it would "not be[ ] binding in any other legal proceeding." Nocera Affidavit, Exhibit F at 1. In any event, as a general matter, facts established in a prior proceeding by stipulation of the parties rather than by judicial resolution are not typically viewed as having been "actually litigated," and therefore do not operate to preclude litigation of the same issues in a later proceeding. *Otherson v. Department of Justice*, 711 F.2d 267, 274 (D.C.Cir.1983). Both because of the explicit limitation contained in the stipulation in question, and because the stipulation obviated any need for the jury to determine the value of the property taken from Sentry's vaults on December 12, 1982, the stipulation plaintiffs offer as proof of their damages can have no preclusive effect in this action.

#### b. Testimony from the Gregory Trial

■ For different reasons, the Court also must disregard Eddie Argitakos' testimony in the criminal trial of Nicholas Greg-

---

**7.** The documents provided to the Court include language that is either identical or substantially

similar to that quoted in the text.

ory. Argitakos appeared in that case solely as a prosecution witness; neither he nor the other defendants implicated in the instant motion were formal parties to that proceeding. Thus, the jury's verdict in the *Gregory* trial, and the evidence on which it was based, would not be binding on defendants in this action under the collateral estoppel principles set forth above. But even if preclusive effect could be given to the jury verdict in that criminal case against one or more of the defendants here, this Court would not be in a position to determine—based solely on the excerpted testimony presented—whether Argitakos' statements were necessary to the verdict the jury ultimately rendered in *United States v. Gregory*. In any event, Argitakos' testimony in *Gregory* provides weak support at best for the damage claims made in the instant case. In the course of his examination, Argitakos referred generally to "money bags" he and his cohorts had removed from the Sentry premises. At one point, he testified that "we took a total count, which came out to, certainly, approximately 9,900,000—something, short of 10 million ..." Murray Affidavit, Exhibit L at 370. The bulk of Argitakos' testimony, however, concerned the preparations for the robbery and the mechanics of sorting and transporting the numerous "money bags" full of cash, negotiable instruments and, in one instance, packets of blank white paper after the robbery had been completed. *See id.* at 374.

#### c. Indictment, Charge and Sentencing Minutes

The remaining items plaintiffs offer the Court as proof of their damages do not suffer the obvious defects of the two noted above. Nonetheless, they highlight triable issues of fact at least with respect to the damages plaintiffs may recover from Potamitis and Eddie Argitakos. Plaintiffs rely principally on Counts II and V of the second superseding indictment, together with relevant portions of Judge Weinfeld's charge to the jury and certain of his remarks at the time of sentencing, to establish respectively that Potamitis and Eddie

Argitakos converted over $10 million, and that Steve Argitakos converted at least $392,000, of cash and other property belong to Sentry's customers (plaintiffs' assignors). These counts and corresponding portions of the jury charge and sentencing colloquy will be examined below. In the interest of completeness, however, the Court begins with a brief examination of the general conspiracy count under which Potamitis and Eddie Argitakos (but not Steve Argitakos) also were convicted.

#### Count I

■ Count I of the second superseding indictment charged these defendants and others with conspiring to commit the various substantive offenses charged later in the indictment. Among the overt acts alleged was the theft by defendants and others of "approximately $11 million in United States currency, ... food stamp coupons and other valuable items from the money room on the premises of Sentry." Murray Affidavit, Exhibit J at 7–8. Had this allegation been necessary to the jury's finding of guilty on the conspiracy count, plaintiffs could conceivably argue that Potamitis and Eddie Argitakos are now precluded from contesting plaintiffs' claim for damages in the amount of $10,018,157.67. It is hornbook law, however, that a single act done in furtherance of a conspiracy may suffice both to establish the "overt act" requirement for finding that a conspiracy existed and to establish the defendants' participation in that conspiracy. *See, e.g., United States v. Santana*, 503 F.2d 710, 715 (2d Cir.), *cert. denied*, 419 U.S. 1053, 95 S.Ct. 632, 42 L.Ed.2d 649 (1974), *cert. denied sub nom, Quinones v. United States*, 420 U.S. 963, 95 S.Ct. 1450, 43 L.Ed.2d 764 (1975). Because the jury in *Potamitis* need not have found that defendants committed each of the overt acts charged in Count I in order to conclude that they had unlawfully conspired, it is impossible for this Court to determine from the general verdict of guilty on Count I which overt acts necessarily underlay the jury's verdict. The reference in Count I to defendants' theft of over $10 million from the Sentry premises

therefore has no preclusive effect here. *See Emich Motors, supra,* 340 U.S. at 569, 71 S.Ct. at 414. The Court turns, then, to the particular substantive counts on which plaintiffs rely.

### Count II

■ Count II, under which both Potamitis and Eddie Argitakos were convicted of bank robbery in violation of 18 U.S.C. § 2113(b), charged both defendants in particular with removing $4,968,680 in currency and food stamps from the Sentry premises. *See* Murray Affidavit, Exhibit J at 13. For two reasons, the Court concludes that this portion of the indictment and the jury verdict that followed it also do not establish any substantial damage claim against those two defendants in this civil action. First, the criminal statute section under which defendants were indicted and on which the jury was instructed requires only that the government prove defendants stole "any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of [a] bank...." 18 U.S.C. § 2113(b). The jury therefore was not required to find that defendants stole anything close to the nearly $5 million mentioned in Count II in order to convict under the bank robbery statute.

Second, even if the relevant statute did not provide a minimum value—specifically, "property or money ... exceeding $100"—on which a jury's finding of bank robbery must be predicated, the particular allegations in Count II concerning the theft of $4,968,680 would not lead this Court to conclude that the jury in *Potamitis* must have found those allegations to be true in order to convict on Count II. Under that count of the indictment, the government

listed particular Sentry customers and their corresponding losses of cash or other property—totalling $4,968,680—from the December 1982 theft. *See* Murray Affidavit, Exhibit J at 13. Each of the customer losses enumerated in Count II, however, corresponds to an identical entry on the stipulation entered into between the government and the defendants in *Potamitis* and discussed earlier in this opinion.

As the Court noted above, the stipulation in question expressly provided that it would have no binding effect in any other legal proceeding. *See supra* at 823. Moreover, by stipulating to the value of the property that was on deposit with Sentry before the 1982 theft and missing afterwards, the parties effectively withdrew the issue of valuation from the jury's consideration. Because the contents of the stipulation were not "actually litigated," *Otherson, supra,* 711 F.2d at 274, they were not necessary to the jury's verdict and can have no preclusive effect in this action. It follows that the particular customer losses enumerated in Count II, which later were included among the losses itemized in the stipulation in question, were never placed in issue at the criminal trial and therefore were not conclusively established in that proceeding.

In sum, then, the guilty verdict on Count II of the second superseding indictment in *Potamitis* establishes only that defendants Potamitis and Eddie Argitakos converted property of plaintiffs' assignors with a value "exceeding $100." This conclusive fact hardly advances plaintiffs' substantial damage claims against the two defendants. Plaintiffs therefore must proceed to trial to establish the losses claimed against those defendants by evidence in addition to the jury's findings in *Potamitis.*[8]

---

**8.** Plaintiffs would have fared little better had they relied on Count III of the second superseding indictment, under which both Potamitis and Eddie Argitakos were convicted of transporting stolen goods in interstate commerce in violation of 18 U.S.C. § 2314. Both § 2314 and Count III of the indictment refer to the transportation of property valued at $5,000 or more. *See* Murray Affidavit, Exhibit J at 14. In instructing the jury on the "transport in interstate commerce" element of Count III, Judge Weinfeld made mention of evidence concerning the transportation of approximately $379,000 to a location in Connecticut. On the valuation element of Count III, however, he instructed the jury only that it must find that the total value of the property stolen and transported was more than $5,000. *Id.,* Exhibit M at 5975–76. On the basis

## Count V

The Court turns now to Count V of the second superseding indictment in *Potamitis*, and to plaintiffs' corresponding damage claim against Steve Argitakos. As already noted, Count V charged Argitakos with being an accessory after the fact by virtue of his having concealed over $1 million in currency stolen from Sentry on December 12, 1982. Murray Affidavit, Exhibit J at 15–16. Judge Weinfeld instructed the jury that to convict Steve Argitakos under Count V, it must find, *inter alia*, that he "did receive, relieve, comfort or assist one or more of the other defendants *by means of the acts charged in the indictment.*" *Id.*, Exhibit M. at 5986 (emphasis added). Furthermore, as previously noted, Judge Weinfeld observed at the time of sentencing that the jury's verdict indicated beyond question that Steve Argitakos had left a footlocker containing approximately $392,000 in stolen money with Steve Panagopoulos, a witness. *Id.*, Exhibit N at 54. Moreover, Judge Weinfeld remarked at that time that the evidence left "little room to doubt" that Argitakos had "played a role" in removing an additional $400,000 from the home of his friends, the Skiedases. *Id.*

■ In the instant motion for summary judgment, it will be recalled, plaintiffs seek damages of only $392,000 against Steve Argitakos for his part in the Sentry robbery of December 1982. The records of the *Potamitis* trial now before this Court leave "little room to doubt" that the jury in that proceeding conclusively found that Argitakos had transported and concealed at least $392,000 in cash or other property stolen from Sentry on December 12, 1982. Inasmuch as this finding was necessary to the jury's verdict of guilty on Count V, the finding may be given conclusive effect in this proceeding. Steve Argitakos therefore will be precluded in this action from contesting his conversion of $392,000 of the property stolen from Sentry's vaults in December 1982.

■ In a relatively recent submission, Steve Argitakos, by his attorney, has disputed plaintiffs' damage claim against him on the ground that the stolen funds he was convicted of having concealed were recovered subsequently by law enforcement authorities. "Since law enforcement authorities recovered the $392,000.00," Argitakos argues, "to award summary judgment for this amount against STEVE ARGITAKOS [sic] again would be tantamount to a double recovery." Affidavit of Kerry J. Katsorhis at 2 (sworn to Dec. 12, 1985). Not surprisingly, plaintiffs take issue strenuously with defendant's suggestion that they may be the recipients of a "double recovery." In fact, plaintiffs maintain, they have recovered none of the $392,000 to which Argitakos' counsel referred in his affidavit, and are involved currently in litigation with the United States to recover those very funds. Affidavit of Robert G. Post at ¶¶ 3–4 (sworn to Dec. 26, 1985).

Without question, the mere recovery of the funds in question by law enforcement officials would not make possible a "double recovery" by plaintiffs in this action unless the authorities had in turn transferred the entire sum over to plaintiffs. Even then, however, plaintiffs' recovery would not be complete because, under the damage measure set forth above, plaintiffs in a successful conversion action also are entitled to interest on the value of the property converted. *See supra* at 823. Particularly in view of plaintiffs' reference to ongoing litigation with the United States, there is no evidence before the Court that plaintiffs have recovered *any* of the amount they seek against Argitakos, let alone that a judgment against Argitakos here would result in any windfall to plaintiffs.

Even assuming that law enforcement authorities had recovered the entire amount of plaintiffs' damage claim against Steve Argitakos and turned the funds over to plaintiffs, these acts would not exonerate

of this record, then, plaintiffs could have argued only that defendants' conviction under Count III

conclusively established their conversion of property worth just over $5,000.

Steve Argitakos from civil liability. At most, they would mitigate the damages plaintiffs are entitled to recover. In this regard, the parties' recent submissions concerning the whereabouts of the funds Steve Argitakos concealed from the authorities raise a material issue of fact as to the extent of plaintiffs' loss.

Although plaintiffs who have established liability for conversion are entitled to recover the value of the property at the time of conversion plus interest, see Fantis Foods, supra, a defendant is entitled to produce evidence of any facts that would make it unjust for the plaintiffs to recover the full value of the converted property, thereby warranting a reduction of the damages to be awarded. See, e.g., Proctor & Gamble Distrib. Co. v. Lawrence Amer. Field Warehousing Corp., 22 A.D.2d 420, 433–35, 255 N.Y.S.2d 788, 800–03 (1st Dep't), rev'd on other grounds, 16 N.Y.2d 344, 213 N.E.2d 873, 266 N.Y.S.2d 785 (1965); 23 N.Y.Jur.2d Conversion § 71 at 304–05. In this action, for example, plaintiffs' damage award would be reduced to take into account their actual recovery of any portion of the stolen cash or property in question. Cf. Flagler v. Hearst, 91 A.D. 12, 86 N.Y.S. 308 (1st Dep't 1904) (damages should have been reduced to account for recovery of converted yacht); see 23 N.Y.Jur.2d Conversion § 71 at 304. If indeed plaintiffs' recovery of the funds from the United States is imminent or likely, the Court is of the view that defendant Argitakos should have the opportunity to present evidence on the probability of plaintiffs' recovery and on the appropriate reduction of damages under plaintiffs' conversion claim that would follow.

In sum, Steve Argitakos is precluded by his prior conviction from contesting his conversion of $392,000 taken from Sentry's vaults on December 12, 1982. Nonetheless, he has raised a triable issue of fact concerning the extent of plaintiffs' loss, in view of the undisputed recovery of $392,-000 by law enforcement authorities and plaintiffs' pending claim against the United States for release of those funds. Plaintiffs' recovery of damages against Argitakos, therefore, also must await the presentation of additional evidence at trial.

## CONCLUSION

On the instant motion for summary judgment, plaintiffs have established that defendants' criminal convictions in *United States v. Potamitis* preclude Christos Potamitis and Eddie and Steve Argitakos from contesting their civil liability for conversion of certain cash and other property stolen from Sentry's premises on December 12, 1982. For the reasons stated above, however, the Court is not persuaded that the judgments of conviction entered in the earlier criminal action conclusively establish the damages plaintiffs claim they are entitled to recover against the respective defendants. Accordingly, the motion is granted in part and denied in part. The parties are directed to communicate with the Court by July 11, 1986, as to what additional time, if any, they require for discovery on the issues reserved for trial. Plaintiffs shall also inform the Court within that time as to whether they intend to pursue their claims against any of the other defendants named in the amended complaint but not implicated in the instant motion.

It is so ordered.